[Civ. No. 3854. Fifth Dist. May 14, 1980.]

JANETTE RICHMOND, Plaintiff,
Cross-defendant and Respondent, v.
ROBERT T. DOFFLEMYER et al., Defendants,
Cross-complainants and Appellants;
DAVID C. STILLWELL et al., Defendants,
Cross-defendants and Respondents.

**COUNSEL**

McCormick, Moock & McCormick, Newell & Chester and Robert M. Newell for Defendants, Cross-complainants and Appellants.

Stammer, McKnight, Barnum & Bailey and Galen McKnight for Plaintiff, Cross-defendant and Respondent.

Houk, Hicks & Spain and Lloyd L. Hicks for Defendants, Cross-defendants and Respondents.

---

**OPINION**

**CONDLEY, J.**\*—This is an appeal by the defendants and cross-complainants, Robert T. Dofflemyer, Robert T. Dofflemyer, trustee,[1] John C. Dofflemyer, Virginia S. Dofflemyer and William T. Dofflemyer II, from an interlocutory judgment rendered by the trial court in favor of the plaintiff, Janette C. Richmond, and in favor of the defendants and cross-defendants, David C. Stillwell and Donald M. Stillwell, in an action for the partition of 4,700 acres of land in Tulare County known as the Ward Ranch.

The complaint filed by Richmond sought a partition of the Ward Ranch in kind. The answer filed by the Stillwell defendants conceded that the partition sought by the plaintiff was fair and equitable and sought a partition to themselves in kind. The answer and cross-complaint filed by the Dofflemyer defendants also sought a partition of the property asking that the property be sold and the proceeds divided among the parties but, in the alternative, asking that the property be partitioned in kind as set forth in their answer and cross-complaint.

All of the parties by their pleadings admitted that they were the owners of the property as tenants in common and admitted that their respective interests in the property were as alleged in the complaint.

The case was tried for five days before the court, after which the court awarded Janette Richmond substantially what she had prayed for. It also awarded certain portions of the ranch to the Stillwells. It then gave all of the parties 30 days to present to the court a plan concerning the disposition of the remainder of the property, none was presented, and on January 18, 1978, a referee was appointed by the court to recommend to the court to whom and the manner in which the remainder of the real property should be partitioned.

---

\*Assigned by the Chairperson of the Judicial Council.

[1]The trust, the incongruity of the trustee's position and other apparent problems relating to the trust are not before this court and will not be considered in this opinion, except as required to answer certain contentions of the parties to this appeal.

This case appears to be the outgrowth of a quarrel between the two branches of the Dofflemyer family over the proper disposition of the Ward Ranch. W. Todd Dofflemyer had two children, a son, Robert T. Dofflemyer, and a daughter, Frances Stillwell. The lawsuit involved a dispute between Frances' side of the family and Robert's side of the family. Frances' children (Richmond and the Stillwells) wanted partition in kind; Robert and his children wanted to sell the ranch and divide the proceeds among the parties in proportion to their interest in the property.

All of the parties to this action own a specified, undivided percentage interest in the Ward Ranch.

| | |
|---|---|
| Robert T. Dofflemyer, individually | 18.991250 percent |
| Robert T. Dofflemyer, Trustee etc. | 25.965000 percent |
| John C. Dofflemyer | 6.008750 percent |
| William T. Dofflemyer II | 6.008750 percent |
| Virginia S. Dofflemyer | 6.008750 percent |
| Janette S. Richmond | 12.339166 percent |
| David C. Stillwell | 12.339167 percent |
| Donald M. Stillwell | 12.339167 percent |
| Total | 100.000000 percent |

In addition to their undivided interest in the real property, each of the parties owns shares in the Hawkeye Ditch Company, a mutual water company, holding a low-flow water right on the Kaweah River which water is used to irrigate the permanent pasture portion of the Ward Ranch. The valuation of the lands comprising the permanent pasture was based on the assumption of an adequate water right through

the Hawkeye Ditch Company. All of the stock of the Hawkeye Ditch Company is owned by the parties as follows:

|  | No. of Shares | Percentage |
|---|---|---|
| Trust | 23 | 25.55% |
| Robert | 16 5/8 | 18.47% |
| John | 5 5/8 | 6.25% |
| Virginia | 5 5/8 | 6.25% |
| William | 5 5/8 | 6.25% |
| Janette | 11 1/8 | 12.36% |
| Donald | 11 1/8 | 12.36% |
| David | 11 1/4 | 12.51% |
| Total | 90 shares | 100% |

The trial court made the following finding about the value of the Ward Ranch.

"The Ward Ranch consists of 4,737.70 acres of land of a total fair market value of $1,288,122.00. Said real property is made up of the following land classifications valued as follows:

| "Steep | $ 150.00 per acre |
|---|---|
| Rolling | 250.00 per acre |
| Undulating | 350.00 per acre |
| Permanent Pasture | 1,000.00 per acre |
| River Bottom | 600.00 per acre" |

Since the death of W. Todd Dofflemyer the Dofflemyer litigants have operated the property along with other contiguous properties owned by Robert Dofflemyer and his family as a cattle ranch.

In 1972 Richmond and her husband acquired 40 acres known as Bohatch, adjacent to the Ward Ranch sections 22 and 28 known as the Indian and Pohot Fields. The Richmonds use the existing road in these adjacent sections to get to their home. Thereafter, Richmond invested approximately $50,000 in building her home and other related improvements on Bohatch and over $5,000 in improving and building the roadway across Indian and Pohot Fields, including realignment, grading, bulldozing, culverts, gutters and surfacing with aggregate. Richmond and her husband have maintained the road since it was built. Richmond also invested approximately $12,000 in a water supply on Pohot.

Subsequently, to settle the disputes occurring between Richmond and Robert Dofflemyer, Richmond filed this action to partition the Ward Ranch. At trial, Richmond requested the court award her the Indian and Pohot Fields "to secure the road and keep it available for that purpose." Since the found value of the Indian and Pohot Fields was less than her full entitlement, Richmond also asked that she be awarded enough land in section 18 to make up her entitlement. Section 18 is located at the northeastern tip of the Ward Ranch. She also requested that she be awarded a permanent easement over sections 24, 25, 26 and 27 in Township 17 South Range 27 East, and over section 19 in Township 17 South Range 27 East, which easement generally follows a roadway maintained by the California Division of Forestry for firefighting purposes. The trial court granted Richmond's request.

David Stillwell testified that he purchased the Boas Minnow Farm in Woodlake, California in 1976. He requested that the court award him the river bottom land which he intended to utilize in his business. He also requested that the court award him all of the permanent pasture in sections 2 and 35 because the permanent pasture might possibly come into future use in expanding his fish husbandry operation. However, the lands requested by David were worth more than his proportionate share of the Ward Ranch. Therefore, with the consent of Donald Stillwell, the court awarded these portions of sections 2 and 35 to David and Donald in undivided interests as tenants in common and further ordered that they be awarded enough of the land in section 26 immediately to the north of section 35 to complete the partition to them.

Robert Dofflemyer testified that he and his family owned and operated the Becquette Ranch, consisting of 2,040 acres of land in sections 10, 14, 15 and part of section 22 immediately north of and adjacent to the Ward Ranch and that he and his wife owned 463 acres of land immediately to the east of the Ward Ranch.

Robert testified he had expended $71,870.70 of his own funds in leveling and improving the lands comprising the permanent pasture.

John Dofflemyer is a part owner of the Becquette Ranch contiguous to the Indian Field. He testified as to how all of the Ward Ranch is used during the year. He testified in particular that without the permanent pasture, the cow and calf operation would have to be reduced by 50 to 65 percent; that he can run 210-220 head of cows in each of the permanent pastures and that he could not economically operate a cow and calf operation without the permanent pasture. He joined his father in recommending to the court that the entire ranch be sold rather than partitioned.

Richard Hopper, the appraiser called as a witness by Richmond, testified the entire ranch would sell for more if divided into smaller parcels than it would sell for if sold as a whole. This testimony was confirmed by Robert Miller, a farm adviser for the University of California, who was called as a witness by the Dofflemyers. Charles Brown, the appraiser called by the Dofflemyers, was not asked questions upon this subject and offered no testimony on it.

In its interlocutory judgment decreeing partition the court made the following orders: "(a) The plaintiff Janette C. Richmond *shall* receive in kind and in lieu of her 12.339166 percent undivided interest in the Ward Ranch the portion of said real property more fully described in exhibit A attached hereto, in fee simple absolute, free and clear of all right, title or interest of any of the parties named herein.

"2. The defendants David C. Stillwell and Donald M. Stillwell *shall* receive in kind, and as tenants in common, and in lieu of a portion of their combined undivided 24.67934 percent interest in the Ward Ranch, that certain real property described in exhibit B attached hereto, free and clear of all right, title or interest of any of the other parties named herein." (Italics added.)

## Prologue

In 1976 the Legislature enacted chapter 73 of the Statutes of 1976 codifying and in some instances amending existing law pertaining to the partition of real property. These new statutes are found in the Code of Civil Procedure commencing with section 872.010 and became effective on January 1, 1977. They were adopted pursuant to a Law Revision Commission recommendation and each new section was accompanied by an official comment from the Law Revision Commission or the legislative committee which passed on the bill.

None of the new sections here relied upon has been construed by any California appellate court.[2] As indicated in the comments of the California Law Revision Commission, the primary purpose of the commission and of the Legislature was to codify existing law unless it was felt that there was some reason for making a change. Where no change was made it will be of assistance to look at some of the decisions decided prior to 1977.

## Discussion

Initially an issue not raised directly by any of the parties needs to be resolved.

■ In an action for partition, an interlocutory judgment determining the rights and interests of parties and directing that partition be made has been made expressly appealable by Code of Civil Procedure section 904.1, subdivision (i).[3] *Williams* v. *Wells Fargo Bank* (1941) 17 Cal.2d 104, 106 [109 P.2d 649].

The appeal is properly before the court.

Appellants argue that they were denied equal treatment by the trial court. Appellants raise two points in support of their contention that the trial court was "obviously unfair" and favored certain cotenants over others (Richmond and the Stillwells over the Dofflemyers).

---

[2]Appellants concede that their brief is unusual in that they have cited no case authority to sustain their position.

[3]All code references are to the Code of Civil Procedure unless otherwise indicated.

■ First they argue that when the court determined partition in kind was proper it should have divided all of the property among the co-tenants at the same time. They cite no authority for this proposition.

Appellants' argument runs counter to statutory authority in the area of partition. Section 872.720, subdivision (b), allows for successive interlocutory judgments if a single judgment will be impracticable or highly inconvenient in a partition action. Section 872.830 gives the trial court authority to order a partial division of the property and a sale of the remainder if it would be more equitable than a division of the whole. Apparently the trial court did not feel that ordering a sale or further division of the property at the time of the interlocutory decree was warranted without the further assistance of a referee, if the parties could not reach an agreement as to the further disposition themselves within the allotted time period.

Section 872.720, subdivision (a), states that the interlocutory judgment may, but need not, include a determination of the manner of partition. At oral argument, when appellants' counsel was questioned about the fact that the trial judge allowed 30 days for the submission of a plan on behalf of the parties to deal with the remainder of the division, no such plan was submitted. However, section 873.600 states that the court must order sale by any methods and terms expressly agreed to by all parties to the action, so the code does provide for and apparently encourages input by the parties where it will save court time and can dispose of certain issues in a manner agreeable to all the parties.

Secondly, appellants argue that as a result of the partial division awarding certain properties to Richmond and the Stillwells, if the referee later determines it impracticable to partition the balance of the Ward Ranch and orders the remainder sold, respondents will receive land free of any tax burden, while the Dofflemyers and the trust will receive no land at all but instead will receive money on which capital gains taxes will have to be paid.

Appellants' contention is without merit for the following reasons: First, the argument is premature in that it anticipates that the referee will recommend and the trial judge will order a sale of the remainder rather than further partition. That issue remains to be resolved. Second, even if the referee recommends and the trial judge orders a sale of the remainder, the respondents will bear their proportionate share of any

tax consequences as to the trust holdings since they are partial beneficiaries of that trust. Third, if respondents choose to sell the property awarded to them in the future, they will face capital gains tax consequences at that time. Fourth, appellants are complaining of a known consequence of the specific action they sought at trial—namely a sale of the Ward Ranch. Finally, in rendering its interlocutory judgment the trial court gave the Dofflemyers an opportunity to avoid the very tax consequences of which they now complain. The interlocutory judgment gave the Dofflemyers 30 days from the signing and entry of the judgment to present to the court their own plan for the disposition of the remainder of the ranch property and provides that if such a plan were presented, the court could partition the remainder of the property in accordance with said plan. If the Dofflemyers feared tax consequences, they could have presented such a plan to the court. They did not do so.

Appellants further argue that section 873.010 is mandatory in the sense that a referee must be appointed before any part of the property can be awarded to any party whether or not the court determines that a referee is necessary or would be helpful. Appellants base this argument on the use of the word "shall" in that section.

■ The word "shall" as used in said section should be construed to require the appointment of a referee only where it is determined that a referee is necessary or would be desirable or helpful and that it should not be so strictly construed as to require the expense and time-consuming services of a referee where the court has adequate evidence before it to render its decision. The function of the interlocutory judgment is to permit the trial court to determine those matters which have been presented to it for determination, and which it can determine upon the evidence submitted to it without the necessity of a referee. The only function of a referee is to assist the court in determining those matters which cannot be so determined upon the evidence before it.

While it is true that the word "shall" is normally given a mandatory construction, this is not always true, and to give it such a construction in this instance would be to ignore prior statutory construction of section 873.010's predecessor statute. Section 873.010 supersedes former section 763. Section 763 provided that under certain circumstances the court "must" appoint three referees. The word "must" is equally as mandatory as the word "shall." In *O'Bryant* v. *Bosserman* (1949) 94 Cal.App.2d 353 [210 P.2d 739], the Court of Appeal held that it was

not necessary for the trial court to appoint a referee where the court had heard all of the evidence and the appointment of a referee was unnecessary. The court said: "...'A great deal of time was taken, without objection, in getting at the facts as to the contributions of the respective parties ....The Court appeared to have reached the conclusion that, with conflicting testimony at many points, and endless detail involved, that the Court had as clear an idea...as a referee would probably be able to arrive at after an extensive and expensive investigation.'..." (*Id.*, at pp. 355-356.)

Appellants, in their reply brief, seem to recognize the merit in such a disposition when they stated: "The appellants do not know if *O'Bryant* qualifies the mandate of section 873.010. However, as an original proposition, it seems sensible that, if the court has all of the facts before it upon which to base a judgment of partition, it would be a waste of time and money to appoint a referee to recommend to the court that which it already knows. However, this is not the situation in the case at bench. The trial court did not have before it sufficient facts to render a *complete* judgment of partition. Rather, the court felt that it had before it only enough facts to make a complete partition for one co-tenant (Janette) and an almost complete partition for two other co-tenants (Stillwells), but felt compelled to appoint a referee to investigate the matter and recommend to the court (1) how much of section 26 should be awarded to the Stillwells and (2) how the remainder of the property should be partitioned among the Dofflemyers and the trust." (Italics in original.)

If appellants acknowledge the reasonableness of a trial court disposing of the matter in its entirety, despite the apparent statutory mandate, the rationality of such action is not lost in the face of only a partial disposition by the trial court where all of the pertinent facts are before him as to certain matters which can be immediately resolved. By the trial court's action, he disposed of over 30 percent of the property subject to partition. In light of the voluminous testimonial and documentary evidence in this case, it would appear the court was amply justified in concluding it would be a waste of time and money to have a referee review and recommend on those issues.

On January 16, 1978, the trial court made its order appointing and instructing the referee as follows: That he should accept as true and correct all of the findings of fact, conclusions of law and interlocutory judgment; to include in his recommendation to the court the awards to Janette C. Richmond, to David C. Stillwell and Donald M. Stillwell, as

provided in the interlocutory judgment; and to accept as true and correct the values placed upon each portion of said real property as found in said findings of fact. It is clear that the trial court did intend and did have the power to make the findings of fact and conclusions of law and interlocutory judgment binding not only upon the parties, but more particularly on the referee. The referee may not make recommendations or find values contrary to the findings of fact, conclusions of law and interlocutory judgment by virtue of the court's instructions to the referee. Nor may the court change these at the time of final judgment.

Next, appellants argue the trial court abused its discretion in ordering a partition in kind instead of a sale of the entire Ward Ranch.

█ As a rule, the law favors partition in kind, since this does not disturb the existing form of inheritance or compel a person to sell his property against his will. Forced sales are strongly disfavored. (*Williams* v. *Wells Fargo Bank* (1943) 56 Cal.App.2d 645, 647 [133 P.2d 73].) The 1976 revision of the partition statute, section 872.810, continues this preference, but the standard for allowing a sale of property has been changed from "great prejudice" to "more equitable" under section 872.820, subdivision (b), thereby enabling sale in cases where it previously was precluded under the predecessor statute.

Under the former statute whether actual partition could be had or whether a sale was necessary was a question of fact which the party seeking the sale had to prove. (*Bartlett* v. *Mackey* (1900) 130 Cal. 181, 183 [62 P. 482].) The presumption is that land held in common tenancy can be equitably divided between the parties by allowing each a tract in severalty, equal to his interest in the whole, measured by value. (*East Shore Co.* v. *Richmond Belt Railway* (1916) 172 Cal. 174, 180 [155 P. 999].) The burden of proof is on one endeavoring to force a sale as against unwilling co-owners to prove that the case is not a proper one for partition in kind. (*Ibid.*; *Faires* v. *Pappmeier* (1951) 104 Cal. App.2d 713, 714 [232 P.2d 41].)

Richmond and the Stillwells asked for a partition in kind. The Dofflemyers asked that the entire ranch be sold as a unit and the proceeds divided among the parties. Appellants acknowledge that the law generally prefers a partition in kind, that the presumption is that the trial court properly exercised its discretion in ordering a partition in kind and that they have the burden of proving the order constituted an abuse of discretion.

Appellants contend that section 872.840 should have compelled the court to order all of the property sold under the circumstances of this case. Section 872.840 states: "(a) Where the property or an interest therein is subject to an express trust, the court may, in its discretion, order that the property be sold.

"(b) Upon division or sale of such property, the property or proceeds of sale allotted to the trustee of the express trust shall be held by him upon the trust therein stated, and no further action by the court pursuant to Section 873.840 is required."

Appellants argue that the largest single interest in the Ward Ranch is the interest owned by Robert as trustee of the Dofflemyer trust. Under the interlocutory decree as it now stands, the trial court has awarded Richmond and the Stillwells approximately 30 percent of the property. They are collectively entitled to approximately 17 percent more of the property. Appellants conclude this means that the trust is entitled to be awarded approximately 41 percent of the remaining balance of the ranch with the remainder divided up between Robert and his children.

Appellants anticipate that when a certain portion of the remaining property is allocated to the trust, the six remaindermen will want the trust's portion of the ranch divided in six equal parcels of equal value, which will be impossible in light of the division that has already taken place. Appellants contend that if a sale of the whole had been ordered, that would have finally settled the matter regarding the trust property.

As noted above, section 872.840 provides that where the property or an interest therein is subject to an express trust the court may, in its discretion, order that the property be sold. The section then provides that the property or proceeds of sale allotted to the trustee shall be held by him upon the trust and no further action by the court is required. This section is explicit and gives the trial court the power to use its own sound discretion in determining whether under all of the facts and all of the evidence presented to it the property should be partitioned in kind or sold.

Again, appellants' argument seems to be premature. It cannot be ascertained at this time what the referee's recommendation to the trial judge will be or whether the judge will follow it.

Furthermore as we have pointed out when the court rendered its interlocutory judgment, the judge invited all of the parties to present a

plan to the court for the disposition of the remainder of the property, including that held in trust. It appears that the Dofflemyers had an opportunity to express their concerns over the division of the trust property or to submit a plan to the court regarding their recommendation as to its ultimate disposition and did not do so.

Appellants concede that it was within the trial court's discretion to partition the property in kind and award the trustee a proportionate interest in the property in kind and in the next breath charge that it was an abuse of discretion to exercise that discretion. Whenever property subject to a trust is partitioned in kind and a portion of the property is awarded to the trustee in kind, there must ultimately be some kind of a distribution or other disposition of the trust property, and further litigation is always a possibility. To say that this is in and of itself an abuse of discretion is to deny such discretion.

None of the parties, by their pleadings or otherwise, asked the trial court to terminate the trust or to divide the trust property between the beneficiaries of the trust by partition in kind or by sale or otherwise. A division of the trustee's interest among the beneficiaries was never at issue.

Appellants' allegation of abuse of discretion cannot be supported under the circumstances of this case.

Next appellants argue that the trial court abused its discretion in awarding the Stillwells the permanent pasture in sections 2 and 35.

David and Donald Stillwell were awarded that portion of the Ward Ranch located in sections 35 and 2 consisting of about 149 acres of permanent pasture and approximately 370 acres of ponds and river bottom, plus some additional steep and rolling grazing land. The court ordered that the balance of their entitlement come from that portion of section 26 adjacent to the property awarded to the Stillwells. As a result, the Stillwell brothers, who collectively own 24.68 percent of the Ward Ranch, were awarded approximately 53 percent of the permanent pasture lands, the fair market value of which was higher than any other classification of land on the Ward Ranch.

Appellants argue that such action was unfair and an abuse of discretion on two grounds: First, they argue that the wording of section 873.210 mandates that each cotenant should receive his fair share of the more valuable parts of the ranch as well as the less valuable parts.

A reading of the statute dispels such an argument. Quality and quantity are to be considered in the allotments by the referee but the determinative factor is that each party shall receive an allotment equal to his interest in the whole of the property.

To divide the property in question among seven individuals and the trust in a way that would give each party a proportionate share of each of the five classifications of land would be an almost impossible task. Even if such a feat could be accomplished, it is probable that such a division would result in a patchwork of ownership, with all of the parties owning fairly small disconnected pieces of property rendering highly unlikely the utilization of the land to its greatest potential.

Appellants insinuate that certain of the parties were awarded nothing but the most valuable land by the court. However, at trial, the river bottom and pond land awarded to the Stillwells was valued by appellants' appraiser, Charles Brown, at $125 per acre, the lowest valuation on the ranch, and was labeled worthless by Brown. Appellants admitted this land was of no use to them in their cattle ranch operation.

Respondent's appraiser, Richard Hopper, placed a value of $1,000 per acre on the area, based on a potential recreational use proposed by David Stillwell. The court found David's proposed use to be consistent with the United States Army Corps of Engineers' proposed plan for the area. The court ultimately valued this river bottom land at $600 per acre, the second highest land value classification on the ranch. The court apparently did this in light of the potential for recreational use suggested by the Stillwells.

Secondly, appellants argue that there was no compelling reason to award the Stillwells any of the permanent pasture. David Stillwell is the owner of Boas Minnow Farm in Woodlake, near the subject property. The business consists of a fish culture and a retail sporting goods store. At trial David testified as follows: "I feel as though I can make a very good use of the pond area for recreation purposes, which happens to be my business. And the permanent pasture area *might possibly* come into *future* use in expanding my fish husbandry operation."

Robert and John Dofflemyer testified at trial that the permanent pasture was essential to their cow and calf operation; John testified that without the permanent pasture they would have to reduce the number of cows by 50 to 66 2/3 percent. John further testified if the court severed the permanent pasture it would reduce the capacity of the permanent pasture substantially.

The court, however, also had before it evidence that the balance of the Ward Ranch could operate without the need for all the permanent pasture. The evidence was that there were only 160-180 cows placed on the Ward Ranch itself by the Dofflemyers, and that both the south permanent pasture, in sections 35 and 2, and the north pasture in section 26, were capable of sustaining 210-220 cows as operated by the Dofflemyers. Hence, it appears all the cows on the.Ward Ranch could be amply cared for on the section 26 pasture, and it was only by bringing in cows from the adjacent separately owned Dofflemyer properties that the permanent pasture was fully utilized. The pasture in section 26 has not yet been disposed of, so that the referee or court could still allocate sufficient land to the Dofflemyers to maintain their cattle operation.

The Stillwells maintain that if all the permanent pasture were awarded to the Dofflemyers, as Dofflemyers requested, then the Stillwell brothers' entitlement would have to come in large part from the grazing lands on the ranch. They reason that taking into consideration the portions awarded to Richmond plus what would have to be awarded to the Stillwells, there would not be enough grazing land left on the ranch to support enough cows to use all the permanent pasture, assuming it were used in the same manner as before.

Mr. Hopper, respondent's expert, noted that it was a rarity to find a large cattle ranch with any permanent pasture at all. He could find no sales of a cattle ranch with permanent pasture. In fact, it was only fairly recently that the Ward Ranch was used with pasture. It was operated by W. Todd Dofflemyer, the original purchaser in 1937, as a feeder operation, for which no permanent pasture is needed. Hence, there is nothing to prevent the Dofflemyers from using the property as it was used in years past.

Significantly, the court apparently made its decision in light of the repeated assertions by the Dofflemyers that they wanted the property sold, and that if it were partitioned at all, they could not continue to economically operate the ranch and would sell it. If the contentions of the Dofflemyers at trial were correct, then they will not be able to operate the ranch with or without the south pasture; since they sought a sale of the whole at trial they must have been contemplating selling the cattle operation.

Appellants next argue that the trial court abused its discretion in awarding the permanent pasture land in sections 2 and 35 to David and Donald Stillwell rather than Robert Dofflemyer and his children. Ap-

pellants argue this was error because Robert Dofflemyer had invested $71,870.87 in leveling and replanting the lands that are now the permanent pasture and that pursuant to section 873.220[4] Robert should have been awarded that property.

At trial Robert Dofflemyer testified as follows: "So we leveled up these sections I am talking about—this part west of Dry Creek and part east of Dry Creek. We releveled and replanted, and in the process of that, I made contributions through the time in my own money of $71,870.87." From the maps and photos in evidence, however, it does not appear that Dry Creek runs through the pasture in sections 35 and 2, but does run through the pasture in section 26. The reference to "these sections I am talking about" only appears to be made clear by reference to pages 243-245 of the reporter's transcript, where all the discussion relates to section 26: The permanent pasture east and west of Dry Creek in section 26; the watering of the pasture in section 26, and the improvement of the 135 acres of permanent pasture in section 26. Later references, at line 21, page 247, through line 4, page 248, and lines 13-20, page 248, reinforce the reference as being to section 26.

Since no disposition has been made of the pasture in section 26, the court is still free to allocate that portion improved by Robert to him, and it appears premature to appeal at this time from any failure to do so.

Appellants next contend that since all of the Hawkeye Ditch water was used to irrigate sections 25 and 26 and was not used to irrigate the lands awarded the Stillwells, all of the Hawkeye Ditch Company stock should be used beneficially by whoever ends up acquiring the permanent pasture in sections 25 and 26. They contend the trial court should have ordered the Stillwells to transfer their shares of Hawkeye Ditch Company stock to the corporation as Richmond was ordered to do.

Respondent's expert, Hopper, based his evaluation of all the permanent pasture on the assumption that it would have adequate water. The water from the Hawkeye Ditch Company entitlement was used exclusively in section 26, and Mr. Hopper was aware of this. However, Mr. Hopper testified that the value of the Hawkeye water was included in

[4]Code of Civil Procedure section 873.220 states: "As far as practical, and to the extent it can be done without material injury to the rights of the other parties, the property shall be so divided as to allot to a party any portion that embraces improvements made by that party or that party's predecessor in interest. In such division and allotment, the value of such improvements shall be excluded."

the value of all the permanent pasture, including specifically that in sections 35 and 2.

The pasture in section 26 does have adequate water, and in fact appears to be sufficient to enable the Dofflemyers to irrigate native pasture in addition to the permanent pasture.

Since the Stillwells between them own less than 25 percent of the Hawkeye stock, and since the pasture in section 26 can be adequately watered with two-thirds of the Hawkeye entitlement, the Stillwell respondents argue that the Stillwells' portion of the water is not needed to keep section 26 watered, and there is no necessity for them to give up their stock for the pasture in section 26 to keep the value attributed to it by the court.

Based upon the pleadings Hawkeye was found to be a mutual water company, no evidence regarding the status of the company having been presented at trial.

■ Shares in a mutual water company are personal property and do not pass on a conveyance of land unless they are appurtenant, and "... one claiming that they are appurtenant, is required to prove it [citations]." (*Wheat* v. *Thomas* (1930) 209 Cal. 306, 315 [287 P. 102].) Section 26 pasture is yet to be disposed of, so any decision as to what should be done with the water company stock is premature.

Appellants next argue that the findings of fact are inadequate and incomplete. In its findings the court valued the entire ranch and found what the fair market value of the various land classifications were. Appellants contend that the court, having made these findings, should have completed its chore and made additional findings as to just what particular portions of the Ward Ranch fell into the various categories of land classification found by the court. They argue that once the trial court took upon itself the burden of determining which particular parcels of land should be awarded to any particular cotenants, and further placed a valuation on these parcels, it should have completed the undertaking and made specific findings as to the fair market value of all remaining parcels of the Ward Ranch.

■ However, it appears the findings of fact are sufficient to cover every ultimate fact necessary to the interlocutory judgment. They do

not finally determine every issue in the case, but that would be impossible since certain issues remain to be determined—no final judgment has yet or could now be entered.

The only specific awards made were made to Richmond and the Stillwells. In support of these awards the court made specific findings as to the fair market value of the entire ranch, the fair market value per acre of each land classification within the ranch as testified to by the witnesses, the interest of each of the parties in terms of percentage, the fair market value of the interest awarded to Richmond and the Stillwells, the description of the property awarded to Richmond and the Stillwells, ard the facts upon which the court based its decision that this award was fair and equitable and without prejudice to the Dofflemyers. These were the ultimate facts in support of the interlocutory judgment and as such they are supported by the pleadings, the admissions of the pretrial conference order and the evidence presented by all of the parties. To require the trial court to go further would be to require findings on evidentiary facts as distinguished from ultimate facts. The rule is that only ultimate facts need be stated, not evidentiary facts. (*Division of Labor Law Enforcement* v. *Transpacific Transportation Co.* (1977) 69 Cal.App.3d 268, 274 [137 Cal.Rptr. 855].)

Appellants next contend the award to Richmond constituted an abuse of discretion. The court awarded Richmond three separate parcels of land: (1) the Indian and Pohot Fields in section 22 which are contiguous; (2) a small portion of section 23 (Dry Creek), which she requested for recreational purposes; and (3) the east one-half of section 18. In addition, the court granted Richmond an easement over several sections of land, in order to give her access to these areas. Appellants argue this "chopping up" destroyed the utility of the property as a cattle ranch.

Richmond testified at trial how she selected the portions of the Ward Ranch she sought to have partitioned to her. First of all, she attempted to determine the value of the various portions of the ranch. From this investigation she concluded that the portion sought by her represented her proportionate share in terms of value. She selected Pohot and Indian Fields because she considered ownership of these two parcels essential to her to provide ingress to and egress from her home and because such ownership was necessary to protect the investment she had made in her home, in providing a water supply on Pohot, and in improv-

ing the road across Pohot and Indian Fields. As previously noted, section 873.220 provides that as far as practical, without material injury to the rights of other parties, the property shall be so divided as to allow a party any portion that embraces improvements made by that party.

In making the decision to seek these portions of the ranch, Richmond stated she attempted to select those parcels which would interfere the least with the value or use of the rest of the ranch. Plaintiff's exhibit No. 5 shows that the property on which Richmond had built her home lies contiguous to the extreme northwesterly corner of the Ward Ranch. Pohot and Indian Fields are contiguous to that property and also lie on the extreme westerly edge of the ranch. The southwest quarter of section 23 is contiguous to Indian Field and gives the Richmonds some frontage on Dry Creek and some level area close to her home which can be used for recreational purposes. Richmond stated if she had selected acreage in section 22 north of Indian Field (instead of section 23), she would have cut off some of Dofflemyers' access to that portion of the Becquette Ranch owned by the Dofflemyers lying north of Indian Field in section 22. Section 18, which is extremely hilly and on the extreme northeasterly corner of the ranch, was included for the purpose of filling out Richmond's proportionate interest and because the very nature of its terrain and its location were such that it could be severed from the rest of the ranch without interfering with the balance of the ranch.

Under such circumstances, appellants have failed to show that the judge's award to Richmond was an abuse of discretion.

Appellants further argue that said interlocutory decree, as it awards property to the respondents Richmond and Stillwells, is not interlocutory but is in fact a final decree making a present award in fee simple to the respondents of specifically described portions of the Ward Ranch. Appellants' assertions in this regard are incorrect.

From the facts of this case, it appears the trial court intended that title should vest at the time of final judgment. Both the findings of fact and conclusions of law and interlocutory judgment of partition clearly show by their language that the trial court did not intend title to vest in Richmond and the Stillwells at the time those documents issued.

The findings of fact and the interlocutory judgment both incorporate the following language: "(a) The plaintiff Janette C. Richmond *shall*

receive in kind and in lieu of her 12.339166 percent undivided interest in the Ward Ranch the portion of said real property more fully described. . . .

"(b) The plaintiff Janette C. Richmond *shall* also receive a permanent easement. . . .

"2. The defendants David C. Stillwell and Donald M. Stillwell *shall* receive. . . ." (Italics added.)

The use of the word "shall" is indicative of a future vesting of the fee. In light of the remainder of the language in the interlocutory decree, the vesting will be when the remainder of the ranch is divided or disposed of at the time of final judgment.

Most importantly section 873.290, subdivision (c), reads as follows: "(c) The division is effective and title vests in accordance therewith upon entry of judgment of partition." Judgment of partition has yet to be entered.

The respondents and the Dofflemyers are beneficiaries of the trust. The trust has not yet received its apportionment whether in kind or in cash, the Stillwells have additional lands to be awarded them to reach their full entitlement and of course the Dofflemyers must receive their apportionment in kind or in cash.

Assuming the accurateness of appellants' contention that the award to Richmond and the Stillwells is a present vested interest, the court has the authority to make successive interlocutory judgments, section 872.720, subdivision (b), and to make a partial division and order the balance sold, section 872.830. ■ It must be remembered that a partition suit is in equity. (*Elbert, Ltd.* v. *Federated etc. Properties* (1953) 120 Cal.App.2d 194, 200 [261 P.2d 743].) A court of equity has broad powers and comparatively unlimited discretion to do equity without being bound by any strict rules of procedure.

Lastly, respondents assert that sanctions be imposed upon appellants under rule 135 of the California Rules of Court. As earlier stated in this opinion, the new code sections that went into effect January 1, 1977, have not been judicially construed by an appellate court in this state. The form of interlocutory judgment here employed, awarding

some of the litigants in kind distribution and appointing a referee to determine how the balance of the ranch is to be partitioned covers new ground. We feel that appellants in good faith raised these issues and the fact that they cannot ground their contentions in appellate precedent, since none exists, should not subject them to sanctions.

Judgment affirmed.

Brown (G. A.), P. J., and Hanson (P. D.), J., concurred.

A petition for a rehearing was denied June 6, 1980, and the opinion was modified to read as printed above.