Filed 9/30/14  Ralston v. Dumouchel CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOSEPH F. RALSTON et al.,<br><br>　　Plaintiffs and Respondents,<br><br>　　　v.<br><br>MARGARET A. DUMOUCHEL,<br><br>　　Defendant and Appellant;<br><br>DONITA L. JONES et al.,<br><br>　　Defendants and Respondents;<br><br>THEODORE G. PHELPS,<br><br>　　Respondent. | G049241<br><br>(Super. Ct. No. 30-2011-00475196)<br><br>O P I N I O N |

　　　　Appeal from an order of the Superior Court of Orange County, Sheila Fell, Judge.  Affirmed.

　　　　James A. Anton for Defendant and Appellant.

　　　　Craig P. Kennedy & Associates and Craig P. Kennedy for Defendants and Respondents Donita L. Jones and William C. Ralston.

Good, Wildman, Hegness & Walley and Nikki P. Miliband for Plaintiffs and Respondents Joseph F. Ralston and Donald J. Ralston.

Law Office of Kirk Rense and Kirk S. Rense for Respondent Theodore G. Phelps.

\* \* \*

## INTRODUCTION

Donald Ralston, Joseph Ralston, William Ralston, Margaret Dumouchel, and Donita Jones are siblings who inherited a piece of commercial property from their parents.[1] In May 2011, Donald and Joseph sued their siblings for partition of the property. The court appointed a referee to advise it as to whether the partition should be in kind or by sale. The referee recommended partition by sale, and the court so ordered.

Margaret opposed the referee's recommendation, and she now appeals from the order of partition by sale. She has a strong sentimental attachment to the property, which has, according to her declaration, been in the family for many decades. The cold, hard economic facts, however, persuaded the court that partition by sale was the more equitable way to divide the property.

We affirm the court's order. We do not reweigh evidence or second-guess the trial court's use of its discretion. Substantial evidence supported the court's decision, and Margaret has given us no grounds for overturning it.

## FACTS

Donald and Joseph sued Margaret, Donita, and William in May 2011 for, among other things, the partition by sale of a piece of commercial property they had inherited as tenants in common from their parents.[2] In April 2012, the court issued an

---

[1] "Hereafter, we refer to the parties by their first names, as a convenience to the reader. We do not intend this informality to reflect a lack of respect. [Citation.]" (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1513, fn. 2.)

[2] Donald, Donita, and William live in Riverside County. Joseph lives in Orange County. Margaret lives in Arizona. The commercial property at issue is located in Anaheim.

2

interlocutory judgment appointing Theodore Phelps as referee to advise the court as to whether the property should be partitioned by sale or in kind. In February 2013, Phelps applied to the court for permission to hire a valuation service to assist him in making his recommendation. The court granted Phelps' request, on condition that the service's report could cost no more than $24,000. In July, Phelps advised the court that the property should be partitioned by sale.[3]

By the time of the hearing on the method of partition, only Margaret opposed the referee's recommendation. She wanted 20 percent of the property to be allotted to her, allowing the other siblings to sell their combined 80 percent if they wanted. She also claimed that title to the property was defective and had to be cleared up before the property could be partitioned and sold. Although she would not buy the other tenants in common out, she offered to pay them 6.7 percent of the sale price as an equalizing payment.

The referee explained to the court why Margaret's proposal would not work. Among other problems, the referee pointed out that it would be very difficult to sell 80 percent of a piece of commercial property, especially one encumbered with a ground lease covering 100 percent of the property. Partition as proposed by Margaret could also be very expensive, necessitating new surveys, permits, easements, and the like. Giving Margaret a 20 percent interest in the property in kind would allow her to "block" any sale of the rest of the property, thereby giving her in effect an economic advantage over the other tenants in common.

The court agreed with the referee and, after a hearing, entered an order requiring the referee to list the property for sale with a commercial real estate broker. Margaret has appealed from this order.

---

[3] The report by the valuation service was not attached to the motion – although Phelps stated it had been distributed to the Ralston siblings – because he felt that a potential buyer would gain an advantage if it could consult the report in the public records. He did not explain why he did not move to file the report under seal pursuant to California Rules of Court, rule 2.551.

3

## DISCUSSION

A partition suit is in equity, and a court of equity has broad powers and comparatively unlimited discretion to do equity without being bound by strict rules of procedure. (*Richmond v. Dofflemyer* (1980) 105 Cal.App.3d 745, 766 (*Richmond*).) The standard of review for an interlocutory judgment of partition is abuse of discretion. (*Capuccio v. Caire* (1929) 207 Cal. 200, 211 (*Capuccio*), superseded by statute on another ground as stated in *Lin v. Jeng* (2012) 203 Cal.App.4th 1008, 1024; *Camicia v. Camicia* (1944) 65 Cal.App.2d 487, 490 (*Camicia*).) The referee's determination that selling the property makes more economic sense than splitting it up among the siblings is a question of fact to be decided by the trial court upon review of the report of the referee. (See *Capuccio, supra*, 207 Cal. at p. 211.) "[T]he character and location of the property is itself evidence from which a court may infer partition in kind may not be made without great prejudice to the owners. This is essentially a factual question, too." (*Cunningham v. Frymire* (1958) 160 Cal.App.2d 726, 729.)

Where an appellant challenges the sufficiency of the evidence, "the reviewing court must start with the presumption that the record contains evidence sufficient to support the judgment; it is the appellant's burden to demonstrate otherwise." (*Baxter Healthcare Corp. v. Denton* (2004) 120 Cal.App.4th 333, 368.) "Under that standard, we must consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the judgment. [Citations.]" (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630 (*Howard*).) "It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact. Our authority begins and ends with a determination as to whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the judgment." (*Id*. at pp. 630-631.)

Margaret faults the trial court's decision on several grounds, each of which is discussed below:

4

# I.	Failure to Read Valuation Service's Report

Margaret asserts that the trial court's ruling must be overturned because the judge did not independently review the valuation service's report upon which the referee based its recommendation.[4]

While it is true that the valuation service's 200-plus-page report was not filed with the referee's recommendation, the court appointed a referee – not the valuation service – to advise it regarding the best decision for the property. In fact, it might almost be said the court appointed a referee so it would *not* have to wade through a 200-page report on real estate. The referee made his recommendation based on the report, and the court independently considered the referee's recommendation and agreed with it.[5] The court was not required to read the report as well.

The two cases Margaret cites to support this argument, *Rockwell Internat. Corp. v. Superior Court* (1994) 26 Cal.App.4th 1255 (*Rockwell*), and *Marathon Nat. Bank v. Superior Court* (1993) 19 Cal.App.4th 1256, do not. Both of these cases concern reports made by discovery referees. A discovery referee is, in effect, substituting for a judge in a discovery dispute. The actual judge therefore has a duty to review everything that would have normally taken place in his or her own courtroom before turning the referee's recommendations into a court order. (*Rockwell, supra*, 26 Cal.App.4th at p. 1249.) Presumably, the judge is also familiar with discovery law and procedure and is therefore in a position to assess what the referee has done.

A referee in a partition action has a very different function. The referee is appointed to advise the judge and make recommendations about the division of property

---

[4] Along the same lines, Margaret states that the court erred by not authorizing a survey of the property. She did not make this objection in the trial court, so she may not raise it here for the first time. (See *Degnan v. Morrow* (1969) 2 Cal.App.3d 358, 366.) Code of Civil Procedure section 873.130 permits the court to grant the referee permission to employ a surveyor, but the Law Review Commission Comment to this code section notes the substantial expense involved as a reason for requiring court approval.

[5] "My recollection is the reason that I appointed a referee was to determine this very issue. [¶] . . . [¶] Is it feasible to partition and sell the [shopping] center in pieces or is it not. And I think that the referee has come up with an answer and, as I indicated before, it was a reasonable answer."

– usually real property – about which the judge is not likely to be any better informed than the average person. (See Code Civ. Proc., §§ 873.010, subd. (a), 873.280, *Richmond, supra,* 105 Cal.App.3d at p. 755.) A referee in a partition proceeding more closely resembles a special master or a court-appointed expert than a substitute judge.[6]

Margaret is, in effect, asserting that insufficient evidence supports the trial court's ruling. As stated above, we do not reweigh evidence. The trial court considered the referee's recommendations and agreed with them. Because substantial evidence supports the court's conclusion, we may not disturb it.

**II.        Defect of Title to the Property**

At the hearing on partition and in opposition to the referee's recommendation, Margaret claimed that she and her siblings did not have full and complete title to the property and therefore some other parties had to be joined in the action. Margaret asserts there are two gaps in the title necessary to establish an unbroken chain: first, a transfer to her mother and, second, a transfer from her mother to her mother's trust. Margaret claims evidence of these transfers is lacking or does not exist, and therefore title is defective.

The basis for this assertion was the deposition testimony of a lawyer hired by William to clear title.[7] Far from casting doubt on the state of the title, the lawyer merely stated that he did not recall seeing documents evidencing the transfers at issue. In response, the referee informed the court that "[t]itle issues are routinely addressed during escrow" and "[a] sale cannot be concluded until title issues are resolved." The court had a sufficient basis upon which to disregard Margaret's objection.

---

[6]        If, for example, the court appointed an expert to advise it on some complex aspect of medicine, the court would not have to read all the textbooks and the entries in a medical record and decide independently if it agreed with the expert.

[7]        Margaret also attached to her declaration a copy of a portion of a deed of gift, dated 1960, from Alouise Carroll to her mother as trustee of Ms. Carroll's trust, without any authentication or request for judicial notice. Margaret then states she has not seen any document transferring the property out of the Carroll trust. Much has happened since 1960, and Margaret's statement that she has not seen a document is not strong evidence the document does not exist.

6

It must be recalled where the process is at this point.  The court has ordered the property listed for sale.  It has not yet been sold.  If title is truly defective, the Ralston siblings will be unable to obtain title insurance, and, as the referee observed, any proposed deal will fall through.  This is not a reason to refuse to partition the property by sale.[8]

**III.          Whether Ruling Was Inequitable**

Code of Procedure section 872.820 permits the court to order property partitioned by sale when "[t]he court determines that, under the circumstances, sale and division of the proceeds would be more equitable than division of the property."  (Code Civ. Proc., § 872.820, subd. (b).)  The law favors partition in kind, to avoid forcing a sale.  (*Richmond, supra,* 105 Cal.App.3d at p. 757.)  Nevertheless, the Legislature revised the partition statutes in 1976 to lower the standard for partition by sale, thereby allowing the court more flexibility in determining which method was "'more equitable.'"  (*Ibid*., quoting Code Civ. Proc., § 872.820.)

Evidence to support a partition by sale rather than in kind is "economic evidence to the effect that, due to the particular situation of the land, the division of the land would substantially diminish the value of each party's interest.  [Citation.]  The generally accepted test in this regard is whether a partition in kind would result in a cotenant receiving a portion of the land which would be worth materially less than the share of the money which could be obtained through the sale of the land as a whole.  [Citation.]  This is a purely economic test."  (*Butte Creek Island Ranch v. Crim* (1982) 136 Cal.App.3d 360, 367.)

The referee presented exactly this kind of economic evidence to the court.  He concluded that allotting 20 percent to Margaret in kind would materially damage the value of the remaining 80 percent allotted to the other siblings.  The valuation service

---

[8] Moreover, if there really are other claimants to the property, Margaret's proposed division in kind (20 percent to her, 80 percent to the other siblings) will also have to be scrapped.

opined that "[I]f a partition representing 20% of the value of the subject property (prior to partition) were possible, such partition would irreparably harm the remaining 80% interest in the subject property."[9]

Margaret's main objection to partition by sale is that she "treasures" the property "so much," because it has been in the family for many years, and a forced sale is "a harsh and painful result." She also alludes vaguely to tax liabilities created by the sale, but she never raised this issue with the trial court or explained exactly what her tax problems would comprise.

Once again, Margaret is basically challenging the evidence upon which the court relied in making its decision. The court determined, based on substantial evidence, that the other siblings would receive materially less money if the property was carved up as Margaret proposed than they would receive if the property were sold as a whole. While Margaret's sentimental attachment to the property is certainly understandable, the court is required to take the interests of all of the tenants into account and to apply purely economic criteria to its determination.

Margaret's' argument requires us to reweigh the evidence regarding the respective benefits to her and to the other tenants and to substitute our judgment for that of the trial court. We may not do so because "'resolution of conflicts in the evidence, assessment of the credibility of the witnesses and the weight to be given the opinions of the experts were all matters within the exclusive province of the trier of fact.' [Citation.]" (*In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 204.) Our review

---

[9] Margaret herself submitted the valuation services' conclusions along with her opposition, so the court had the benefit of these conclusions when it ruled.

Margaret also complains that the court should have carved out her portion and allowed her to pay a 6.7 percent equalizing payment to the other tenants. She bases this figure on another conclusion of the valuation service, which was that an across-the-board 20 percent per tenant partition of the property was not feasible. "The only potential partition would involve the Wells Fargo and/or the Furniture World improvements, both of which are currently situated on legal parcels. Combined, these two improvements contribute 26.7% of the property's total value." Margaret took this observation to mean she could take this parcel, pay her siblings 6.7 percent of the sale price of the rest of the property, and all would be well. As the referee explained to the court, this proposal ignores the "irreparabl[e] damage" to the remaining 80 percent if the property is partitioned in kind.

8

is limited to a determination "as to whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the judgment." (*Howard, supra*, 72 Cal.App.4th at pp. 630-631.) There is such evidence, and therefore we may not disturb the trial court's decision.

## DISPOSITION

The interlocutory order is affirmed. Respondents are to recover their costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


ARONSON, J.


FYBEL, J.