[Civ. No. 17038.   First Dist., Div. One.   Jan. 2, 1957.]

S. LEE VAVURIS, Appellant, v. RAYMOND A. PINELLI
et al., Respondents.

James C. Purcell for Appellant.

Robert K. Barber for Respondents.

AGEE, J. pro tem.*—Plaintiff brought this action for damages for breach of an alleged oral agreement by defendants to execute a five-year written lease. The trial court found upon conflicting evidence that defendants did not make any such agreement. Plaintiff makes no contention that this finding is not supported by substantial evidence. Defendants also raise the statute of frauds. (Civ. Code, § 1624, subd. 4; Code Civ. Proc., § 1973, subd. 4.) The trial court held that this was likewise a good defense.

Judgment was rendered for plaintiff in the sum of $185, that being the amount of rent owing by defendants for the last month of their month-to-month tenancy of the premises in question. Plaintiff has appealed from this judgment.

Plaintiff and his brother held the master lease on premises located at 714 and 710 Folsom Street, in the city and county of San Francisco. This lease expired by its terms on January 14, 1952. On May 17, 1948, they executed, as sublessors, a written sublease of 714 Folsom Street. This sublease expired by its terms on December 31, 1951, and provided for a rental of $125 per month. The sublessees operated a tavern on the premises. In November, 1950, they sold out to defendants, Raymond A. Pinelli and Louis Sanchez, and assigned the sublease to them. Plaintiff is an attorney at law and he handled all of the details of the sale and acted as escrow holder. He retained the sublease in his files and defendants did not have a copy.

In October, 1951, plaintiff obtained a new master lease of 714 and 710 for the term commencing January 15, 1952, and ending January 14, 1957, at a rental of $95 per month. Prior to this, there had been a general discussion between plaintiff and defendants about a new sublease of 714 for the period commencing January 1, 1952. Plaintiff told them that as soon as he had contacted the owners about a new master lease he would talk to them further. He did tell them, however, that there would be a "slight increase" in their rent. In December, 1951, plaintiff told defendant Pinelli

*Assigned by Chairman of Judicial Council.

that the defendants could have a new lease and that the rent would be increased to $200 per month. Pinelli told plaintiff that they would not pay that much rent. Plaintiff called back later and told Pinelli that they could have the place for $185 per month. Pinelli agreed to this and asked plaintiff to prepare a new lease. Plaintiff suggested that the new lease contain all of the other terms of the existing lease. Pinelli told plaintiff that he had never read or seen that lease and would not agree to a new lease until he had seen its proposed terms. Pinelli asked plaintiff to draft a new lease and bring it to the tavern so that all of the parties could look it over at the same time. Plantiff never presented a new lease to defendants. He testified that on January 2, 1952, he prepared and signed an "Extension of Lease" but he admitted that he did not at any time show this to defendants and they did not sign it. This extension instrument adopted the old lease by reference except as to the new period and the increased rental. Defendants paid the increased rental, commencing January 1, 1952. Defendant Sanchez called at plaintiff's office on several occasions and asked to see the proposed lease but he was always told that it had been misplaced. As late as April, 1953, defendant Sanchez called at plaintiff's office, paid the rent, and asked to see the proposed new lease and again plaintiff said he could not find it but that defendants were not to worry about it. About this time defendants became discouraged by their failure to obtain a new lease, the roof was leaking badly, and cars in the parking lot adjacent to the tavern were bumping into the side of the building and knocking liquor bottles off the shelves. In May, 1953, defendants gave plaintiff 30 days' written notice of termination of tenancy, sold their liquor license and closed up.

Plaintiff then filed this action for damages in the sum of $7,955, that amount representing the total rent for the balance of the five-year period at $185 per month.

Plaintiff's first contention is that it was not necessary, in order to effectuate the new lease, that defendants, as lessees, sign the "Extension of Lease" which plaintiff prepared and which he testified was signed by him on January 2, 1952. In all of the cases* relied upon in support of this contention,

---

*Allan v. Guaranty Oil Co., 176 Cal. 421 [168 P. 884]; Chandler v. Hart, 161 Cal. 405 [119 P. 516, Ann.Cas. 1913B 1094]; Dodd v. Pasch, 5 Cal.App. 686 [91 P. 166]; Watkins v. McCartney, 57 Cal.App. 643 [207 P. 909]; Munford v. Humphreys, 68 Cal.App. 530 [229 P. 860].

there was an agreement reached by the lessor and the lessee as to the terms of the lease and the lessee entered into possession under the lease agreed upon. Here, the parties did not reach an agreement as to the proposed new lease and their entry into possession was under the old lease of May 17, 1948. In each of the cases referred to by plaintiff, there was a delivery to the lessee of the lease agreed upon, signed by the lessor. In the instant case there may have been a signing by the lessor but there was no delivery to the lessee. ██ "To become operative, a lease must not only be signed but delivered." (15 Cal.Jur. p. 617, citing authorities.) Plaintiff kept the "Extension of Lease" in his file and defendants never even saw it. The trial court found as follows: "Prior to the termination of said lease, plaintiff and the defendant LOUIS SANCHEZ engaged in certain oral negotiations relative to the execution of a new written lease of the premises from plaintiff to defendants but no such new lease was executed nor were the terms there-ever agreed upon by the parties." This finding is supported by substantial evidence.

██ The second contention of plaintiff is that it was not necessary that defendants sign the instrument dated January 2, 1952, in order to make it effective, because such instrument was merely an extension of the term of the original lease at an increased rental and not a renewal thereof. The cases relied upon by plaintiff involve leases which contain an express provision for such an extension. (See 172 A.L.R. 1219 et seq., for collection.)

The plaintiff argues from these cases that a mere holding over by the lessee constitutes an election to take the additional or extended term and obviates the necessity of executing a new lease. The fallacy of this argument is that the original lease in the instant case contains no such provision for an extension. Instead, it provides as follows: "Twentieth: Any holding over after the expiration of said term, with the consent of the lessor, shall be construed to be a tenancy from month to month, at a rental of One Hundred and Twenty Five ($125.00) Dollars—and shall otherwise be on the terms and conditions herein specified, so far as applicable."

██ Plaintiff's third contention is that defendants are estopped to raise the statute of frauds as a defense. His argument is that he was under no obligation to obtain a new master lease and that he obtained the new master lease "solely in reliance upon the promise of the defendants to execute

the instrument in question [the so-called extension of lease]." This argument fails for the obvious reason that the trial court found that the defendants had not made any such promise. The defendants so testified and plaintiff does not claim that this finding is not supported by substantial evidence.

Plaintiff's fourth contention is that there has been no surrender of the premises. He states that a surrender of leased premises before the expiration of the term can be done only by expressed consent of the parties in writing or the operation of law when they do something that implies that both have consented. This argument is based upon the assumption that there was a valid lease for a specified term in existence after the expiration of the original term. Defendants correctly point out that, after December 31, 1951, their tenancy was from month to month and that all that was necessary, in order to terminate such tenancy, was to comply with section 1946 of the Civil Code. Here, the notice required by this section was admittedly given. This is all that defendants were required to do to terminate their tenancy at the end of the 30-day period. (*Dorn* v. *Oppenheim,* 45 Cal.App. 312 [187 P. 462].)

Lastly, plaintiff complains of the denial of his motion to file a supplemental complaint. This proposed pleading requested a money judgment for rent at the rate of $185 per month from January 1, 1953, to the entry of judgment. It is based upon the theory that a new lease was in effect between the parties. This is a different theory than that alleged in the original complaint, which was for damages for breach of an oral agreement to execute a lease. Both theories, however, are dependent upon the existence of an agreement to execute a lease and, in view of the finding that there was no such agreement, any judgment rendered on the proposed supplemental complaint would of necessity have been the same as the judgment rendered on the original complaint. This being so, plaintiff could not have been prejudiced by the denial of his motion. It should also be noted that plaintiff was attempting to change his election of remedies by means of a "supplemental complaint," which he cannot do. (*Bradbury* v. *Higginson,* 162 Cal. 602 [123 P. 797].)

The judgment is affirmed.

Bray, Acting P. J., and Wood (Fred B.), J., concurred.