[No. C002365. Third Dist. May 24, 1990.]

DIANE M. WALLACE, Plaintiff and Appellant, v.
JAMES H. DALEY et al., Defendants and Appellants.

[Opinion certified for partial publication.*

*Pursuant to rule 976.1 of the California Rules of Court, the Reporter of Decisions is directed to publish all portions of this opinion except parts I, III, and IV.

**COUNSEL**

Lawrence M. Cobb for Plaintiff and Appellant.

Orlebeke, Hutchings & Pinkerton and W. Ronald Orlebeke for Defendants and Appellants.

OPINION

DAVIS, J.—Defendants James H. Daley and Harvey E. Daley (defendants)[1] appeal, and plaintiff Diane M. Wallace cross-appeals, from an interlocutory judgment in an action to partition real property located in Arbuckle.[2] In the interlocutory judgment the court ordered the property sold and the proceeds divided among the parties, the co-owners of the property. Plaintiff was credited with the increase in the property's value caused by improvements made by plaintiff and her predecessor in interest. Defendants were credited with the value of plaintiff's exclusive use and occupation of the property while she was a co-owner. Generally, the parties contend that the court erred in determining the value of the property and plaintiff's entitlement to credits.

We hold the trial court properly valued the property, but erred in its determination of charges and credits. In the published portion of the opinion we hold that plaintiff is entitled to credit for improvements made by her predecessor in interest, but not for improvements she made to the property before or after acquiring her interest. In the unpublished portion of the opinion, we hold that the trial court properly valued the property, and that the terms of the lease agreement govern the amount plaintiff owes her cotenants for her use and occupation of the property. We reverse the judgment.

FACTS

The subject matter of this action is a 20-acre parcel of land in rural Colusa County consisting of an 18-acre almond orchard, a house, out-buildings, and about 2 additional acres of land adjacent to the house (the property). In 1969, both defendants and James M. Podva (Podva), defendants' cousin and plaintiff's father, each obtained an undivided one-third interest in the property as tenants in common.

Over the years, the eighteen-acre almond orchard was tended by one person and the house, out-buildings, and adjacent two acres of land (the residence) was rented to another. In 1976, Podva suggested to defendants that they rent the residence to plaintiff and her former husband (the Wallaces). In a March 27, 1976, letter, the Wallaces advised defendants that they desired to rent the residence for $65 per month, to obtain a first option

---

[1] Jean Daley and Virginia Daley were also named as defendants. However, it was stipulated at trial that they had no interest in the real property involved in this case and they are not parties to this appeal.

[2] The interlocutory judgment is appealable pursuant to Code of Civil Procedure section 904.1, subdivision (i).

to purchase the property, and to make improvements and repairs at the residence. Plaintiff had already discussed these matters with Podva.

Defendants agreed in writing to the rental and option to purchase, but stated that "[i]n view of the small rental charge, it must be clearly understood that you will assume all costs and liability for any and all repairs, alterations and improvements you or your agent(s) may make to the rented property unless specifically authorized in writing by the owners."

The Wallaces wrote back that they were "agreeable on all points, and of course will assume all costs and liability for any and all improvements we may make on the place." The Wallaces moved into the residence in June 1976 and began paying $65 per month rent to Podva and defendants.[3] The monthly rent was increased to $90 in 1978.

It is undisputed that the residence was in poor condition when the Wallaces first moved into the residence, which included a house, a bunkhouse, "an old barn that was half burnt down," a dilapidated tank house, a garage and a woodshed. Plaintiff testified that these structures required major renovation in order to be safe. Mr. Podva testified that house was in "deplorable" condition and that "[t]he first thing [he] noticed was the rats having a run of the place, and their droppings." The septic tank overflowed, and sewage flowed over the ground. The back porch of the house had rotted to the ground from termite damage, the roof of the bunkhouse had caved in, the barn was "totally useless," and the garage "was just . . . nothing."

It is also undisputed that between 1976 and 1983, plaintiff and Podva made numerous valuable improvements to the residence. Podva testified that he and the Wallaces tore down the lean-to back porch of the house, hauled away and burned the debris, laid a new foundation and built a new bathroom. A septic tank was added, the electrical wiring was renovated, and the burned out barn and the bunkhouse were removed. The barn was replaced with a concrete and metal Cuckler brand building, the chimney and well were repaired and the roof of the house was replaced. During plaintiff's tenancy a horse barn and corrals were built and the tank house was renovated. Plaintiff testified that the tank house was renovated in order "to keep the building from falling down completely" as well as for her own use and convenience.

---

[3] Defendants incorrectly state that plaintiff never paid rent to her father. In fact, plaintiff sent separate rent checks to her father and to defendants, but her father either returned the checks or did not cash them.

In July 1983, Podva conveyed his undivided one-third interest in the property as a tenant in common to plaintiff.[4] Plaintiff then ceased paying rent and continued to occupy the residence through the time of the trial.

After becoming an owner of the property, plaintiff made additional improvements to the residence, including the erection of additional corral fencing, additions to the tank house, construction of an aviary, and installation of electrical fencing. Plaintiff testified that she added the fencing because it "improves the property" and because it permitted her to allow the animals to graze and made it unnecessary to have the grass at the residence removed as a fire prevention measure.

Receipts for the purchase of materials and for work performed at the residence were admitted into evidence without objection. Based upon these exhibits, the court made specific findings in its statement of decision as to the amounts expended by plaintiff and Podva. The amounts of such expenditures are undisputed. Podva never informed defendants he was going to make any improvements, never asked their permission to do so, or ever sought reimbursement from them. There is no evidence that plaintiff did any of these things either, prior to commencing the present lawsuit. At no time did either defendant contribute to the improvement of the property.

Plaintiff filed a verified complaint seeking, inter alia, partition of the property in kind and for "judgment . . . [a]gainst defendants . . . for their respective shares of sums reasonably expended by plaintiff and plaintiff's predecessor-in-title in maintaining and preserving the property . . . ." and asked that the portion of the property awarded to her include the residence. Defendants answered and cross-complained against plaintiff, seeking partition by sale and reimbursement for "those sums due and owing Cross-Complainants by Cross-Defendant for the exclusive use and occupancy of the residence . . . including but not limited to, the reasonable rental value of said property, real property taxes, insurance, and maintenance" beginning when plaintiff became an owner of the property.

After the mandatory settlement conference, the court issued a "settlement conference order" reciting that the parties had stipulated that "[t]he case will proceed to trial . . . as to the limited issues hereinafter specified. The subject limited issues are as follows: [¶] a. The court will determine the current fair market value of the entire parcel, including the improvements thereon, and, [¶] b. The court will also determine the amounts of (1) any credits to which plaintiff may be entitled because of improvements to or

---

[4] Podva's late wife, Alta Podva, was also named as a grantor in the deed, which recited that plaintiff was then an unmarried woman.

payments of any expenses relating to the subject parcel, and (2) any debits chargeable to plaintiff by reason of plaintiff's use or occupancy of the subject property."

The case was tried to the court and submitted upon filing of posttrial briefs. In her posttrial brief plaintiff argued that "[t]he issue in this case is not . . . whether [plaintiff] can recover from the owners for the expenditures made by her in her capacity as tenant, but whether the [defendants] are entitled in this equitable proceeding to participate in the enhanced value of the improvements . . . . That is the sole and only issue in this case."[5] Defendants' argument, on the other hand, related to whether or not plaintiff was entitled to a pro rata reimbursement for the actual cost of the improvements, and did not address the question whether or not defendants could benefit by any increased value of the property resulting from the improvements made by Podva and plaintiff.

The statement of decision was made a part of the record on appeal pursuant to stipulation and our October 13, 1987, augmentation order. The trial court found, inter alia, that Podva had spent $16,597.74 on repairs and improvements on the residence, that plaintiff had spent $11,661.87 for the same purpose, and for real estate taxes. The court also found that plaintiff occupied the residence for 39 months up to the month before trial and that the average fair rental value of the residence during that time was $200 per month. The court found the fair market value of the property was $75,000 and that the improvements by plaintiff and Podva had increased the value of the property by $20,000.

In the interlocutory judgment plaintiff was granted the right to purchase defendants' interest in the property for $41,042.46.[6] The interlocutory judgment also provides that if plaintiff elected not to purchase defendants'

---

[5] At trial, plaintiff testified that she was "asking the court to award to [her] 100 percent of the expenses that [she and Podva] have made to improve the property."

[6] In the statement of decision, the court illustrated how it arrived at the purchase price of defendants' interest in the property as follows:

| "Fair Market Value | | $75,000.00 | |
|---|---|---|---|
| Credits to Plaintiff | | | |
| Taxes paid | $1,236.32 | | |
| Increase in value due to improvement | $20,000.00 | | |
| Offset for reasonable value of occupancy | $-7,800.00 | | |
| | $13,436.32 | $13,436.32 | |
| | | $61,563.68 | |
| "Total payment to be made by Plaintiff to Defendants (2/3rd of $61,563.68) = | | | $41,042.46" |

interest, the property would be sold by a referee and the proceeds divided, one-third to plaintiff and two-third to defendants, after plaintiff was credited with $20,000 for the enhanced value of the property and $1,236.23 for property taxes paid. The credit to plaintiff was ordered offset by the reasonable rental value of the residence at the rate of $200 per month from the time plaintiff obtained her ownership interest in the property and continuing to the time of sale.

Additional facts will be stated in our discussion of the issues.

### DISCUSSION

### I.*

. . . . . . . . . . . . . . . . . . . . . .

### II

██ ██ Defendants assert plaintiff was not entitled to any credit for improvements she or her predecessor in interest made to the property prior to becoming a tenant in common. We hold plaintiff was entitled to credit for improvements made by her predecessor in interest, but not for improvements she made to the property before or after acquiring Podva's interest.

██ ██ An action for partition is governed by the broad principles of equity jurisprudence, and 'the courts have adhered, in adjusting the rights of cotenants and defining their interest in the common property, to the classic formulas encapsulated in the maxims that equity is equality and he who seeks equity must do equity, and have dispensed equitable relief only upon condition that the equitable rights of a cotenant are respected and safeguarded. [Citations.]" (*Elbert, Ltd.* v. *Federated etc. Properties* (1953) 120 Cal.App.2d 194, 200 [261 P.2d 743].)

Defendants assert that plaintiff is not entitled to a credit for the increased value of the property caused by any improvement made by Podva for the following reasons: (a) Podva did not assign to plaintiff his right to a credit for improvements he made; (b) Podva's improvements were made when plaintiff was a tenant; and (c) in making improvements, Podva was acting as plaintiff's agent, and was precluded by the rental agreement from receiving reimbursement for such expenses. We disagree.

██ Every partition action includes a final accounting according to the principles of equity for both charges and credits upon each cotenant's interest. Credits include expenditures in excess of the cotenant's fractional share for necessary repairs, improvements that enhance the value of the property,

---

*See footnote, *ante*, page 1028.

taxes, payments of principal and interest on mortgages, and other liens, insurance for the common benefit, and protection and preservation of title. (Code Civ. Proc. § 872.140; 4A Powell on Real Property (Rohan ed. 1989) ¶ 607 [6], p. 50-77.)

■ California, through Code of Civil Procedure section 873.220 and former section 764, has long provided that as far as practical and where it can be done without material injury to other cotenants, the property in a partition action is to be divided so as to allot to a party any portion that embraces improvements made by that party, and the value of the improvements must be excluded from the valuation in making the allotment.[8]

This rule applies "[e]ven though one cotenant does not consent to the making of the improvement, since an action for partition is essentially equitable in its nature, a court of equity is required to take into account the improvements which another cotenant, at his own cost in good faith, placed on the property which enhanced its value . . . ." (*Mercola* v. *Chester* (1950) 97 Cal.App.2d 140, 143 [217 P.2d 32].) Here neither party contends that the improvements Podva made to the property were made in other than good faith.

■ Plaintiff, however, is not an improving cotenant, but rather, is his successor in interest. Prior to the 1976 revision of the partition statutes and the enactment of Code of Civil Procedure section 873.220, it was unsettled in this state under what circumstances, if at all, a cotenant was entitled to compensation for improvements made by her predecessor in interest.[9] By

---

[8] Former Code of Civil Procedure section 764 provided in pertinent part: ". . . In all cases it is the duty of the referees, in making partition of land, to allot the share of each of the parties owning an interest in the whole or in any part of the premises sought to be partitioned, and to locate the share of each cotenant, so as to embrace as far as practicable the improvements made by such cotenant upon the property, and the value of the improvements made by the tenants in common must be excluded from the valuation in making the allotments, and the land must be valued without regard to such improvements, in case the same can be done without material injury to the rights and interests of the other tenants in common owning such land."

In 1976, the Legislature revised the partition statutes in the Code of Civil Procedure. Section 764 was superseded by Code of Civil Procedure section 873.220 which provides: "As far as practical, and to the extent it can be done without material injury to the rights of the other parties, the property shall be so divided as to allot to a party any portion that embraces improvements made by that party or that party's predecessor in interest. In such division and allotment, the value of such improvements shall be excluded."

[9] The Law Revision Commission's comment to Code of Civil Procedure section 873.220 provides: "Section 873.220 continues the substance of the last sentence of former Section 764.

"This codifies the common law doctrine. See e.g. Seale v. Soto 35 Cal. 102 (1868). In the case of sale rather than division of the property, California case law applies a comparable rule. See, e.g., Ventra v. Tiscornia, 23 Cal.App. 598, 138 P. 954 (1913); Mercola v. Chester, 97 Cal.App.2d 140, 217 P.2d 32 (1950)."

The comment is mistaken to the extent it suggests that section 873.220 merely continues the substance of the last sentence of former Code of Civil Procedure section 764. Section 764

enacting section 873.220, however, the Legislature resolved the question expressly by choosing to provide that a cotenant's successor in interest, as well as the cotenant herself, is entitled to credit for improvements upon division of the property. Section 873.220 provides "[a]s far as practical, and to the extent it can be done without material injury to the rights of the other parties, the property shall be so divided as to allot to a party any portion that embraces improvements made by that party *or that party's predecessor in interest.* In such division and allotment, the value of such improvements shall be excluded." (Italics added).[10] We find it significant that in extending such credit to a cotenant's successor in interest, the Legislature retained the limitation contained in former Code of Civil Procedure section 764 that credit is only available to the extent it can be done without material injury to the rights of the other parties.[11] Section 872.140 was also enacted in 1976 providing "[t]he court may, in all cases, order allowance, accounting, contribution, or other compensatory adjustment among the parties according to the principles of equity." Since improvements made by a cotenant's predecessor in interest tend to be more difficult for other cotenants to identify and trace, these provisions provide a necessary protection for parties, such as bona fide purchasers for value of a cotenant's interest, who might otherwise be materially and unjustly harmed by a credit.

■ Had the trial court divided the property in kind, Code of Civil Procedure section 873.220 would be dispositive. However, here the trial court applied an exception to the rule of partition by division codified in Code of Civil Procedure section 872.810.[12] Pursuant to section 872.820, the court determined that, under the circumstances, sale of the property and division of the proceeds would be more equitable than division of the prop-

---

contains no reference to improvements made by a predecessor in interest. Nor do the cases cited for the "common law doctrine" address the issue of improvements made by a cotenant's predecessor in interest.

[10] One out-of-state court has held that when there is no showing that a cotenant paid for the improvement of her predecessor in interest or was obligated to pay for the same, the rule entitling an improving cotenant to compensation does not apply. (*Ferris* v. *Montgomery Land & Improve. Co.* (1891) 94 Ala. 557 [10 So. 607].) Here there is no evidence plaintiff paid for or was obligated to pay for the improvements made by Podva. However, Code of Civil Procedure section 873.220 does not distinguish between successors in interest that pay for or are obligated to pay for improvements made by their predecessor in interest. Failure to pay for the improvements, then, would not alone prevent a successor in interest from obtaining credit. Such a fact could, nonetheless, be properly considered by the court in making necessary equitable determinations such as whether to proceed by division or by sale, and whether credit for improvements and other compensatory adjustments among the parties can be ordered without material injury to the rights of the other cotenants. (Code Civ. Proc., §§ 872.140, 872.810, 873.220.)

[11] See, *ante,* footnote 8.

[12] Code of Civil Procedure § 872.810 provides: "The court shall order that the property be divided among the parties in accordance with their interests in the property as determined in the interlocutory judgment."

erty.[13] (*Butte Creek Island Ranch* v. *Crim* (1982) 136 Cal.App.3d 360, 365-366 [186 Cal.Rptr. 252].)

The common law of this state has long recognized that the determination to proceed by sale rather than division will not prevent an improving cotenant from being compensated for improvements he makes in good faith. (*Milian* v. *De Leon* (1986) 181 Cal.App.3d 1185, 1194 [226 Cal.Rptr. 831]; see, e.g., *Willmon* v. *Koyer* (1914) 168 Cal 369, 374 [143 P. 694]; *Mercola* v. *Chester, supra,* 97 Cal.App.2d 140,143; *Southern Adjustment Bureau* v. *Nelson* (1964) 230 Cal.App.2d 539, 541 [41 Cal.Rptr. 148]; *Shenson* v. *Shenson* (1954) 124 Cal.App.2d 747, 754-755 [269 P.2d 170]; *Combs* v. *Ritter* (1950) 100 Cal.App.2d 315, 320 [223 P.2d 505].) Essential principles of equity require that a cotenant be credited with improvements made in good faith regardless whether the court proceeds by division or sale of the property provided that it can be done without material injury to the rights of the other parties. (Annot. (1919), 1 A.L.R. 1189, and cases cited therein.)

These same essential principles of equity lead us to conclude that a court's determination to proceed by sale rather than division will not prevent a part owner from being compensated for improvements made by her predecessor in interest where it can be done without material injury to the rights of the other parties. The right of a cotenant to compensation for improvements made by her predecessor in interest is not derived from the divisibility of the land in kind, but rather from a Legislative decision to so compensate a cotenant. (Code Civ. Proc., § 873.220.) We hold that a cotenant is entitled to the same benefit of improvements made by her predecessor in interest regardless whether the property is sold pursuant to Code of Civil Procedure section 872.820 or divided pursuant to Code of Civil Procedure section 872.810.

■■■ That plaintiff was an ordinary tenant at the time Podva made his improvements is irrelevant. Podva made his improvements when he was a tenant in common and in equity was entitled to the benefits of his expenditures. Finally, defendants' assertion that Podva was acting as his daughter's agent in making the improvements is contrary to the evidence. Podva testified that he made the improvements only to benefit the property, and not to benefit his daughter. We will not disturb the trial court's implied acceptance of this testimony. Plaintiff is entitled to a credit for the increase in the value of the residence caused by Podva's improvements.

---

[13] Code of Civil Procedure section 872.820 provides: "Notwithstanding Section 872.810, the court shall order that the property be sold and the proceeds be divided among the parties in accordance with their interests in the property as determined in the interlocutory judgment in the following situations:

"(a) The parties agree to such relief, by their pleadings or otherwise.

"(b) The court determines that, under the circumstances, sale and division of the proceeds would be more equitable than division of the property. For the purpose of making the determination, the court may appoint a referee and take into account his report."

■ The parties apparently believe that plaintiff's tenancy was terminated when she acquired Podva's interest in the property. Not so. We shall conclude that the rental agreement was never terminated and that it governs our determination whether plaintiff was entitled to any credit for an increase in the value of the residence resulting from her improvements. We shall conclude that the rental agreement precluded such a credit.

It is undisputed that according to the rental agreement, plaintiff was initially required to pay rent at the rate of $65 per month. In 1978, the rental agreement was modified so as to increase the rent to $90 per month. Because the rental agreement provided that rent would be paid monthly for an indefinite term, a tenancy from month to month was created. (Civ. Code, § 1944; *Flournoy* v. *Everett* (1921) 51 Cal.App. 406, 407 [196 P. 916]; *Palmer* v. *Zeis* (1944) 65 Cal.App.2d Supp. 859, 861 [151 P.2d 323].)

■ Such a tenancy is terminated only by written notice given 30 days in advance (Civ. Code, § 1946; *Renner* v. *Huntington etc. Oil & Gas Co.* (1952) 39 Cal.2d 93, 102 [244 P.2d 895]; *Vavuris* v. *Pinelli* (1957) 147 Cal.App.2d 390, 394 [305 P.2d 149]; *Dorn* v. *Oppenheim* (1919) 45 Cal.App. 312, 313 [187 P. 462]), and plaintiff's acquisition of a one-third interest in the property did not terminate the rental agreement or her obligations thereunder. (*Higgins* v. *California P. & A. Co.* (1895) 109 Cal. 304, 308-309 [41 P. 1087]; *Lewis* v. *Kohls* (1945) 70 Cal.App.2d 20, 26-27 [160 P.2d 199]; *Vucinich* v. *Gordon* (1942) 51 Cal.App.2d 434, 436-437 [124 P.2d 868].)

■ "Where, in addition to being tenants in common, the relation of the parties to partition is, in fact, that of landlord and tenant, no improvement of all or any part of the common property, made by the tenant in possession in the character of an ordinary tenant, can, in the absence of a covenant covering the construction and cost of such improvement, constitute the basis of an enforceable claim for contribution on partition. [Citation.]" (Annot., 1 A.L.R., *supra,* at p. 1191; see *Ventre* v. *Tiscornia* (1913) 23 Cal.App. 598, 606 [138 P. 954].) The rental agreement did not provide for a credit based on improvements by plaintiff. Quite the contrary, the rental agreement provided that unless she obtained her landlords' written authorization, plaintiff was to "assume all costs and liabilities for any and all repairs, alterations and improvements . . . ." As the rental agreement recites, plaintiff agreed to such a condition in consideration for the "small rental charge." (*Ibid.*) It is uncontested that defendants never authorized any of the improvements made by plaintiff. Plaintiff having bargained away any right she might have to compensation for improvements made to the property, the trial court erred in awarding her a credit based on such improvements.

We are unpersuaded by plaintiff's assertion that in 1976 the monthly rent "closely approximated" the then $114 per month fair rental value testified

to by Peter Brennan. First, we observe that Mr. Brennan testified that the 1976 fair rental value of the residence may have been either $114 or $138, depending upon whether certain assumptions were valid in 1976. Thus, if Mr. Brennan is believed, the rent due initially under the rental agreement was roughly one-half of the fair rental value. In any case, whether the rental price approximated the fair rental value is beside the point. Plaintiff bargained away, for a valuable consideration, any right she had for compensation based on improvements to the residence. This she was free to do. Whether or not it was financially sound for her to make the improvements in light of her agreement to bear all "costs and liability" therefore was her decision to make. The court erred in compensating her for any improvements she made.[14]

Both sides contend that the court's finding that the improvements built by plaintiff and her predecessor in interest caused a $20,000 increase in the value of the property was not supported by substantial evidence. Because we have concluded it was error to award plaintiff a credit based on the increase in the property's value caused by plaintiff's improvements, on remand the trial court will have to determine the increased value of the property caused solely by Podva's improvements.

### III, IV*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### V.   Disposition

The judgment is reversed, and the case remanded for further proceedings consistent with this opinion. The parties shall bear their own costs on appeal.

Sparks, Acting P. J., and Sims, J., concurred.

---

[14] We observe that if at any time plaintiff believed she had struck a poor bargain, she was free to negotiate with her landlords, and if negotiations failed, to terminate her lease on 30 days' notice.

*See footnote, *ante*, page 1028.