Filed 6/28/13  DeMartini v. DeMartini CA1/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| MICHAEL DEMARTINI et al.,<br><br>     Cross-complainants and Appellants,<br>v.<br>TIMOTHY DEMARTINI et al.,<br><br>     Cross-defendants and Respondents. | A133277, A134749<br><br>(Marin County<br>  Super. Ct. No. CIV 085235) |

These consolidated appeals have been taken from a judgment of partition of numerous parcels of real property among siblings, and related orders.  Cross-complainants and appellants claim that the trial court erred by ordering the partition by sale of one of the parcels, awarding capital improvement expenses to one of the cross-defendants without reduction for below market rent paid, and awarding mineral rights entirely to cross-defendants.  We conclude that the order for partition by sale was not an abuse of discretion.  We further conclude that the award of reimbursement for capital expenditures that improved a parcel was not error, although the award must be reduced by the amount of rent paid by the cross-defendants in possession of the parcel below the fair market value.  The award of mineral rights was not prejudicial error.  We therefore direct the trial court to modify the award of reimbursement, but otherwise affirm the judgment and the remaining orders from which the appeals have been taken.  Cross-complainants' request for judicial notice filed on January 18, 2012, is denied as moot.  The documents that cross-complainants request judicially noticed are already included in the record on appeal.

## STATEMENT OF FACTS

This prolonged dispute began innocuously enough, with testamentary documents executed by James P. DeMartini, Sr., and his wife Thelma,[1] which divided their fairly extensive real property holdings, a single building in Marin County and numerous parcels in Nevada County, equally among their eight children. The real property so divided and conveyed by James, Sr., and Thelma over the years through intervivos gifts or by estate bequests consist of a commercial property on Bolinas Avenue in San Anselmo (the San Anselmo property), numerous undeveloped parcels of a Nevada City Ranch Property referred to as the Empress Ranch, subdivided from a total of 420 acres that served as the family home, the Empress Mine mineral rights with a stipulated value of zero also located in Nevada City on some of the ranch parcels, a commercial building at 102 Catherine Lane in Grass Valley occupied by a pharmacy, two other occupied medical buildings on Catherine Lane in Grass Valley, an unimproved lot on Dorsey Drive in Grass Valley, and a vacant lot located in Nevada City. The parties before us are the eight children of James, Sr., and Thelma and their spouses, who received the bequests of the property in equal shares: cross-complainants and appellants Michael and his wife Renate; cross-defendants James C. and his wife Ruth; and cross-defendants and respondents, Timothy and his wife Margie, Daniel and his wife Linda, David and his wife Nancy, Mark and his wife Laurie, Jon and his wife Lynne, and Sally Humphreys and her husband Newell.

The will of James, Sr., was probated in 1983; the will of Thelma was probated in 2000. By the date of Thelma's death, all the real property had passed in shares to her eight children and their spouses, although in varying proportions over the years, rather than in an equal division.[2] Thereafter, the properties were jointly owned in different shares and managed by the parties.

---

[1] For purposes of clarity and convenience we will refer to the parties, who are all members of the DeMartini family and their spouses individually by their first names.

[2] One parcel, located at 111 Dorsey Lane in Grass Valley, was inadvertently omitted from the testamentary trust of James, Sr., but was divided and ordered distributed among the beneficiaries in the present action.

The parties attempted unsuccessfully to distribute the properties among themselves for many years, but at least managed to agree on the vested percentage interests owned by each of the parties and the market value of the parcels, based on expert property and appraisal reports. The total value of the properties was set by the parties at $6,302,500. The parties stipulated that the San Anselmo property has a value of $1,700,000, and the Catherine Lane property has a value of $675,000, making the entire remainder of the parcels of real property worth $3,927,500.

The litigation before us was initiated with two complaints filed on October 23, 2008, by six of the siblings, Timothy, Daniel, David, Mark, Jon, and Sally, and their spouses: one, for partition by sale of the San Anselmo property; the second, for preliminary and permanent injunction against Michael and Renate to prohibit any further use of funds to repair or improve the San Anselmo property. The temporary restraining order, issued in the case by stipulation, was subsequently dissolved, and the trial court denied the request for a preliminary injunction on the ground that plaintiffs failed to show a likelihood of success on the merits.

Michael and Renate (cross-complainants) subsequently filed a cross-complaint for partition against cross-defendants Timothy and his wife Margie, James C. and his wife Ruth, Daniel and his wife Linda, David and his wife Nancy, Mark and his wife Laurie, Jon and his wife Lynne, and Sally Humphreys and her husband Newell. In 20 separate causes of action the cross-complaint sought partition in kind of each of the parcels of real property jointly owned by the parties. The request of Michael and Renate for partition in kind of the property was ultimately joined by James C. and his wife Ruth; the remaining cross-defendants requested partition by sale of all of the parcels.[3]

At trial, the court was ultimately presented with two competing plans for division and allocation of the parcels. Using the stipulated values of the parcels and adhering to

---

[3] Although James C. and Ruth were not named as cross-complainants, due to their alignment with Michael and Renate at trial we will refer to the two factions of siblings and their spouses collectively as follows: Michael, Renate, James C. and Ruth, who requested partition in kind of the property, as cross-complainants; the remaining group, who favored partition by sale, as cross-defendants.

existing percentages of commercial and residential properties, cross-complainants submitted a plan for essentially equal partition in kind that divided the parcels into commercial and residential properties. Cross-complainants would receive commercial properties that included the unimproved lot on Dorsey Drive in Grass Valley (the Dorsey Drive property), and the medical building on Catherine Lane in Grass Valley, along with designated residential parcels of the Nevada City Ranch Property on Jones Bar Road. Cross-defendants would receive the remaining commercial parcels, including the San Anselmo property and the Catherine Lane property on which David operated the pharmacy business (the pharmacy property), along with other residential parcels of the Nevada City Ranch Property. The distribution would be equalized by payments of a total of $3,000 from cross-complainants to cross-defendants.

Cross-defendants continued to seek partition by sale of all of the property at trial, and objected to cross-complainants' proposed in kind distribution. David and Nancy complained that allocation of the "empty lot" on Dorsey Drive to cross-complainants, specifically Michael and Renate, would adversely impact parking for customers of their pharmacy on Catherine Lane, a "crucial" element of their business. Other cross-defendants expressed a preference for residential lots that were targeted to go to cross-complainants in their plan. Cross-defendants also pointed out that the San Anselmo property targeted for distribution to them under cross-complainants' plan may suffer from subsurface environmental contamination of unknown nature and extent that would compromise the value of the property.

Quite late in the trial proceedings, cross-defendants suggested a different disposition: sale of the San Anselmo property and division of the proceeds, with partition in kind of all of the remaining parcels. David and Nancy would retain the pharmacy building on Catherine Lane, and the nearby Dorsey Drive property for parking. The remaining properties would be partitioned among the parties, with a payment from cross-defendants to cross-complainants of approximately $26,000 to equalize the division.

Following the presentation of evidence and argument, the trial court adopted cross-defendants' plan for sale of the San Anselmo property and partition in kind of the

4

remaining parcels. In an interlocutory judgment of partition filed on June 20, 2011, the court ordered sale of the San Anselmo property and distribution of the proceeds to the parties in equal one-eighth shares of $212,500 per couple. The Nevada County properties were ordered partitioned in kind rather than sold, and were divided according to the court's calculation of the remaining varying percentage interests of each couple based on prior transfers over the years. The pharmacy building on Catherine Lane and the lot on Dorsey Drive in Grass Valley were awarded to cross-defendants, with title vested 80 percent in David and Nancy. David and Nancy were granted reimbursement in the total amount of $135,000 for capital improvements made on the pharmacy building. Specified parcels of the Nevada County ranch property were awarded to cross-complainants; the rest of the parcels, along with the Empress Mine mineral rights, were awarded to cross-defendants. By agreement, the parties accepted each of the parcels as cotenants. Michael was ordered to account for all of his income and expenses related to his prior management of the San Anselmo property. A referee was appointed to effectuate the sale of the San Anselmo property to the highest bidder, administer all title transfers of the Nevada County properties, and oversee accounting for all transactions.

The trial court subsequently granted cross-defendants' motion for a restraining order prohibiting Michael or his agents from any further management of the San Anselmo property, or incurring any liability for the property. A management company was also appointed by the court as a limited receiver to preserve and maintain the San Anselmo property, collect rents, and incur expenses for maintenance and repair.

Appellants Michael and Renate have filed appeals from both the interlocutory judgment of partition, the restraining order, and other designated orders. We have consolidated the appeals.

## DISCUSSION

### I. The Apportionment of the San Anselmo Property.

The primary issue before us concerns the trial court's decision to order sale of the San Anselmo property rather than distribution of it in kind with the remaining parcels. Cross-complainants argue that "California law strongly favors partition in kind" of jointly

5

owned property, and cross-defendants failed to satisfy their burden of proof that a sale of the San Anselmo property was "necessary and equitable." Cross-complainants point out that the value of the San Anselmo property was stipulated, so the "possibility of environmental issues with respect to that property" did not justify the court's decision to order a sale, which had the effect of diminishing their share of "the ranch land in a partition in kind," and requiring them to "pay capital gains taxes on the sale of the property." They claim "the trial court's decision to require sale of the San Anselmo property exceeded the bounds of its discretion."

We begin our inquiry by observing that partition by sale of jointly owned property, even partial partition by sale, is within the statutory authority of a trial court under recognized circumstances. Although Code of Civil Procedure section 872.810[4] directs that a court "shall order that the property be divided among the parties in accordance with their interests in the property as determined in the interlocutory judgment," section 872.820 provides: "Notwithstanding Section 872.810, the court shall order that the property be sold and the proceeds be divided among the parties in accordance with their interests in the property as determined in the interlocutory judgment in the following situations: [¶] (a) The parties agree to such relief, by their pleadings or otherwise. [¶] (b) The court determines that, under the circumstances, sale and division of the proceeds would be more equitable than division of the property. For the purpose of making the determination, the court may appoint a referee and take into account his report." Section 872.830 adds: "If, in making a determination whether sale would be more equitable than division of the property, the court finds that *sale and division of proceeds for part of the property* would be *more equitable* than division of the whole property, the court may order that such part be sold and the remainder divided." (Italics added.)

Thus, despite the preference for partition in kind, "In lieu of dividing the property among the parties, the court shall order the property be sold and the proceeds divided

---

[4] All further statutory references are to the Code of Civil Procedure.

among the parties in accordance with their interests in the property if the parties agree to such relief or the court determines sale and division of the proceeds would be more equitable than a division of the property. (Code Civ. Proc., § 872.820.)" (*LEG Investments v. Boxler* (2010) 183 Cal.App.4th 484, 493.) "Section 872.830 gives the trial court authority to order a partial division of the property and a sale of the remainder if it would be more equitable than a division of the whole." (*Richmond v. Dofflemyer* (1980) 105 Cal.App.3d 745, 754.) The burden of proof is on one endeavoring to force a sale as against unwilling co-owners to prove that the case is not a proper one for partition in kind. (*East Shore Co. v. Richmond Belt Railway* (1916) 172 Cal. 174, 180; *Faires v. Pappmeier* (1951) 104 Cal.App.2d 713, 714.)

The "more equitable" standard is a broad one that vests considerable authority in the trial court "to use its own sound discretion in determining whether under all of the facts and all of the evidence presented to it the property should be partitioned in kind or sold." (*Richmond v. Dofflemyer*, *supra,* 105 Cal.App.3d 745, 754, 758.) "[A] partition suit is in equity," and "a court of equity has broad powers and comparatively unlimited discretion to do equity . . ." (*Id.* at p. 766; *Elbert, Ltd. v. Federated etc. Properties* (1953) 120 Cal.App.2d 194, 200.) The trial court's decision in an action for partition will not be disturbed on appeal absent an abuse of discretion. (See *Hall v. Bru* (1932) 216 Cal. 153, 155; *Zarrahy v. Zarrahy* (1988) 205 Cal.App.3d 1, 5; *Hummel v. First National Bank* (1987) 191 Cal.App.3d 489, 493–494.) In our review for abuse of discretion this court "will not weigh questions of fact determined by the trial court in a partition action if there is any substantial evidence to support them." (*Cunningham v. Frymire* (1958) 160 Cal.App.2d 726, 729.)

We find no abuse of discretion here. Although the parties agreed before trial on a market value for the San Anselmo property, along with all of the other parcels, the evidence adduced at trial, including an environmental site assessment report by AllWest Environmental Inc., revealed the cognizable prospect of subsurface environmental contamination of the property due to possible past release of drycleaning chemicals on the site. The report recommended a further subsurface investigation, which had not yet

7

been done, to assess the environmental quality of the soil, soil gas, and groundwater on the property. As a result, the more equitable apportionment, as the trial court recognized, was to order sale of the property to equally assign the risk of any loss of value associated with any necessary additional environmental investigation and cleanup. None of the parties was anxious to receive an in kind award of the San Anselmo property and thereby assume the entire financial consequence of restoration of the property. The character and location of the property is evidence from which a court may infer partition in kind is not equitable. (See *Cunningham v. Frymire*, *supra*, 160 Cal.App.2d 726, 729–730.) The sale of the San Anselmo property and distribution of proceeds also afforded the parties the opportunity to retain and improve other parcels awarded to them in kind. Under the facts presented, partition by sale of the San Anselmo property was the more equitable disposition. No abuse of discretion occurred. (*Richmond v. Dofflemyer, supra,* 105 Cal.App.3d 745, 759; *Romanchek v. Romanchek* (1967) 248 Cal.App.2d 337, 343–344.)

**II. The Award to David of Credit for Capital Improvements in the Pharmacy Building**.

Cross-complainants assert that the trial court's "most glaring error" in the partition order is the award of "expenses claimed by David for capital improvements" to the pharmacy building on Catherine Lane. The Catherine Lane property was owned 75 percent by David and Nancy, 12.5 percent by cross-complainants, and 12.5 percent by Mark and Laurie. While the parties were co-owners of the Catherine Lane property, the Spring Hill Pharmacy corporation wholly owned by David and Nancy paid $125,960 for a "major remodel" of the building, $2,000 in an attempt to repair a roof leak, then $10,000 for an entirely new shingle roof. David and Nancy sought reimbursement for capital expenditures incurred to improve and repair the premises in the total amount of $137,960. The expenditures were depreciated over the years on tax returns filed by Spring Hill Pharmacy.[5] The amount of rent for the building paid by Spring Hill Pharmacy varied and increased over time, but most recently was $4,800 per month, of which $400 was paid to cross-complainants, $400 was paid to Mark and Laurie, and

---

[5] Spring Hill Pharmacy paid all of the property taxes and insurance on the property.

8

$4,000 was paid to David and his wife Nancy. The $4,800 per month rent was approximately $.87 per square foot, below the reasonable rental value of the building of $1.15 per square foot. David testified that he intended to pay a "fair rent" for the property, and would "pay that rent."

The trial court granted David and Nancy reimbursement in the amount of $135,000, excluding the $2,000 expenditure for roof *repairs* as "not capital in nature." Cross-complainants' contention that any reimbursement awarded to David and Nancy must be reduced by the "tax benefit" they received and the amount they paid in rent over the years below the "fair rental value for the property," was rejected by the court. The court adjusted the net value of the Catherine Lane property to account for the reimbursement in the amount of $135,000. David and Nancy were thus awarded 80 percent ownership of the Catherine Lane property valued at $540,000 after the deduction for reimbursement. Cross-complainants and Mark and Laurie were each awarded a 10 percent interest in the property, or $67,500.

Cross-complainants argue that David and Nancy were erroneously awarded reimbursement for the capital improvements made in the Catherine Lane property. They maintain that the reimbursement order is "unfair" and improper for two reasons: First, the "capital improvements" made in the Catherine Lane premises "solely" benefitted the Spring Hill Pharmacy business conducted by David and Nancy; and second, the court failed to reduce the reimbursement award by the amount of rent below market value paid by David and Nancy and the tax benefit they received.[6]

Statutory law provides for reimbursement in partition actions. (*In re Marriage of Leversee* (1984) 156 Cal.App.3d 891, 897.) "Section 872.140 provides a court effecting a partition 'may, in all cases, order allowance, accounting, contribution, or other compensatory adjustment among the parties according to the principles of equity.' " (*Finney v. Gomez* (2003) 111 Cal.App.4th 527, 539, italics omitted.) Section 873.220 states: "As far as practical, and to the extent it can be done without material injury to the

---

[6] These issues were adequately raised and presented in the trial court, and therefore have not been waived or forfeited by cross-complainants.

rights of the other parties, the property shall be so divided as to allot to a party any portion that embraces improvements made by that party or that party's predecessor in interest. In such division and allotment, the value of such improvements shall be excluded."

"Every partition action includes a final accounting according to the principles of equity for both charges and credits upon each cotenant's interest. Credits include expenditures in excess of the cotenant's fractional share for necessary repairs, improvements that enhance the value of the property, taxes, payments of principal and interest on mortgages, and other liens, insurance for the common benefit, and protection and preservation of title. (Code Civ. Proc. § 872.140; 4A Powell on Real Property (Rohan ed. 1989) ¶ 607 [6], p. 50–77.)" (*Wallace v. Daley* (1990) 220 Cal.App.3d 1028, 1035–1036.) "Even though one cotenant does not consent to the making of an improvement, since an action for partition is essentially equitable in its nature, a court of equity is required to take into account the improvements which another cotenant, at his own cost in good faith, placed on the property which enhanced its value and to award such cost to him." (*Mercola v. Chester* (1950) 97 Cal.App.2d 140, 143.)

Even where, as here, partition of the property proceeded in part by sale, "the determination to proceed by sale rather than division will not prevent an improving cotenant from being compensated for improvements he makes in good faith. [Citations.] Essential principles of equity require that a cotenant be credited with improvements made in good faith regardless whether the court proceeds by division or sale of the property provided that it can be done without material injury to the rights of the other parties." (*Wallace v. Daley, supra,* 220 Cal.App.3d 1028, 1038.)

Nothing in the record before us indicates that the expenditures were not incurred in good faith. The global value of the property held by the parties, not just the Spring Hill Pharmacy business, was increased by the capital improvements. The value of the Catherine Lane property, and with it the value of the parties' property interests as a whole, was enhanced by the remodeling and roof replacement paid for by David and

Nancy. The court acted well within its discretion by granting reimbursement for the capital expenditures. (*Williams v. Miranda* (1958) 159 Cal.App.2d 143, 159.)

The more difficult issue is whether the trial court erred by failing to reduce the reimbursement award by the difference between the amount of rent paid by David and Nancy over the years, and the full market value for rent of the building. As we read the record, David agreed that the Spring Hill Pharmacy corporation paid less than full market value in rent. Cross-complainants adduced evidence that Spring Hill Pharmacy paid rent of $.87 per square foot to occupy the building, whereas the reasonable rental value of the building was $1.15 per square foot. David also acknowledged that he was willing to pay a fair and reasonable rent.

Tenants in common have the right to occupy the common property. (*Brunscher v. Reagh* (1958) 164 Cal.App.2d 174, 176.) When one tenant in common occupies the property, the out-of-possession cotenant is generally not entitled to recover the imputed rental value of the property from the cotenant in possession. (*Id*. at pp. 176–177.) Three exceptions to this rule exist in California: when there is an agreement between the cotenants to share the rents and profits from the property (cf. *Black v. Black* (1949) 91 Cal.App.2d 328, 332); when one cotenant has been ousted from possession by the other (*Estate of Hughes* (1992) 5 Cal.App.4th 1607, 1611–1612); or, in a partition action, when recovery of the imputed rental value by the cotenant out of possession would be "just and consonant with equitable principles." (*Hunter v. Schultz* (1966) 240 Cal.App.2d 24, 32.) In a partition action, " 'cotenants invoking the jurisdiction of an equity court to obtain contribution for maintenance or protective expenditures on the common property have been subjected to defensive allowances of the whole or a proper proportion of the reasonable value of their occupancy or use.' . . . [Citation.]" (*Hunter v. Schultz, supra,* at p. 32, italics omitted.)

In this partition action, the just and equitable result is to offset the reimbursement granted to David and Nancy by the amount of rent they paid which was below market value for the premises. If they are entitled to receive credit for capital improvements that increased the value of the property for all of the beneficiaries, which they are, they must

11

also be prepared in fairness to reduce their reimbursement by the benefit they alone received by paying less than market value rent. The fact that cross-complainants did not require David and Nancy to pay greater rent for the property during their co-ownership of the property does not defeat their claim for an offset. David and Nancy received a windfall from payment of less than market value rent. This is an action in equity. The failure of a party to previously demand greater rent from a sibling cotenant does not foreclose an offset where that result is in all other respects fair and equitable. The record does not demonstrate that cross-complainants intentionally relinquished their right to obtain the offset by expressly granting David and Nancy the right to pay less than market rent without reducing their reimbursement for capital expenditures. The evidence does not even show that cross-complainants knew the rent paid by Spring Hill Pharmacy was below market value. Thus, no waiver occurred. " '[W]aiver is the "intentional relinquishment or abandonment of a known right." [Citations.]' [Citations.]" (*San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 435, fn. 8.)

Finally, David and Nancy admitted they were prepared pay market value rent to their siblings. Equity demands an offset in the reimbursement awarded to cross-defendants in the amount of rent they paid below established market value. Thus, the trial court abused its discretion by failing to reduce the award of reimbursement for capital improvements by the difference between the amount David and Nancy actually paid in rent and the reasonable value of their occupancy or use of the property – which was established by the evidence.

### III. The Award of Mineral Rights to the Empress Mine.

Cross-complainants also claim that the trial court erred by allocating the mineral rights to the Empress Mine entirely to cross-defendants. They object to the severing of the mineral rights from the surface estates, which were divided in kind among the parties. Cross-complainants maintain that the "best solution," which was recommended by the "expert appraiser" and agreed upon by the parties, was to grant the mineral rights to the owners of "the respective surface estates." Instead, the court apportioned the entirety of

12

the mineral rights to cross-defendants. They argue that the court's allocation of mineral rights improperly ignored the expert recommendation and created the prospect of future conflict among the parties.

A dispositive factor in our evaluation of the Empress Mine mineral rights allocation is that the stipulated value of property is zero. Thus, cross-complainants have failed to demonstrate that a different allocation of the mineral rights would have been monetarily more beneficial to them.

Even if we assume the allocation of mineral rights was error, reversal of the judgment is not appropriate without an indication in the record of prejudice. Cross-complainants, as the appealing parties, "must also show that the error was prejudicial (Code Civ. Proc., § 475) and resulted in a 'miscarriage of justice' (Cal. Const., art. VI, § 13)." (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069; see also *San Joaquin Raptor/Wildlife Rescue Center v. County of Stanislaus* (1996) 42 Cal.App.4th 608, 626.) "A judgment will only be reversed if the error at the trial court level resulted in a miscarriage of justice to the extent that a different result would have been probable without the error." (*Malibu Mountains Recreation, Inc. v. County of Los Angeles* (1998) 67 Cal.App.4th 359, 372.) A miscarriage of justice is not found "unless it appears reasonably probable that, absent the error, the appellant would have obtained a more favorable result." (*Khan v. Medical Board* (1993) 12 Cal.App.4th 1834, 1841; see also *Mike Davidov Co. v. Issod* (2000) 78 Cal.App.4th 597, 606.) "Prejudicial error must be affirmatively demonstrated and will not be presumed." (*People v. Bell* (1998) 61 Cal.App.4th 282, 291.)

Cross-complainants have not met the burden of showing a miscarriage of justice on appeal. With a stipulated value of zero, the allocation of the mineral rights to cross-defendants did not damage cross-complainants by commensurately diminishing the value of the property they received. Cross-complainants have offered only conjecture of some future conflict due to the separation of the partitioned parcels and the mineral rights. Speculative harm cannot support reversal of a judgment. (See *People v. Gray* (2005) 37 Cal.4th 168, 230; *In re Esmeralda S*. (2008) 165 Cal.App.4th 84, 96.) We therefore

13

decline to reverse that part of the judgment awarding the mineral rights to cross-defendants without a cognizable showing of prejudice to cross-complainants.

In any event, we find no abuse of discretion in the trial court's allocation of the mineral rights. The court was not required to follow the opinion and recommendation of the appraiser to retain the mineral rights with the respective surface parcels. In light of the ongoing dispute the parties have endured, the court may have decided that dividing the worthless mineral rights among the various parties and ranch parcels may somehow spawn even more litigation. The trial court's resolution is no more likely to engender conflict than a division of mineral rights with the separate ranch parcels. Also, the nature, extent and association of the mineral rights with the various parcels was not made entirely clear by the evidence presented at trial. What is clear is that the mineral rights have no value. No prejudicial error was committed in the allocation of the mineral rights to cross-defendants.

## IV. The Appointment of a Referee and the Award of Parcels to the Parties as Cotenants.

James C. and Ruth, who were cross-defendants below but ultimately allied with cross-complainants at trial, have filed a brief as *respondents*, but in which they assume the role of appellants and argue that the trial court erred by failing to appoint a referee *prior to trial* to review the large number of diverse properties, identify land planning, subdivision map act and environmental concerns, and present a partition plan to the court. To support their contention James C. and Ruth rely on section 873.010, which in subdivision (a) provides: "The court *shall* appoint a referee to divide or sell the property as ordered by the court." (Italics added.)[7] They also challenge the trial court's

---

[7] Subdivision (b) of section 873.010 states: "The court may: [¶] (1) Determine whether a referee's bond is necessary and fix the amount of the bond. [¶] (2) Instruct the referee. [¶] (3) Fix the reasonable compensation for the services of the referee and provide for payment of the referee's reasonable expenses. [¶] (4) Provide for the date of commencement of the lien of the referee allowed by law. [¶] (5) Require the filing of interim or final accounts of the referee, settle the accounts of the referee, and discharge the referee. [¶] (6) Remove the referee. [¶] (7) Appoint a new referee."

14

determination that they agreed to accept each of the parcels awarded to them as cotenants.

We reject these contentions for several reasons. First, James C. and Ruth did not file an appeal in this case and did not join cross-complainants in their appeal. They are not entitled to act as appellants and present issues for resolution in this appeal. Second, despite use of the word "shall" in section 873.010, subdivision (a), the statute has been "construed to require the appointment of a referee only where it is determined that a referee is necessary or would be desirable or helpful and that it should not be so strictly construed as to require the expense and time-consuming services of a referee where the court has adequate evidence before it to render its decision. The function of the interlocutory judgment is to permit the trial court to determine those matters which have been presented to it for determination, and which it can determine upon the evidence submitted to it without the necessity of a referee. The only function of a referee is to assist the court in determining those matters which cannot be so determined upon the evidence before it." (*Richmond v. Dofflemyer, supra,* 105 Cal.App.3d 745, 755.) Here, the trial court properly appointed a referee after partition of the property to complete the sale of the San Anselmo property, administer title transfers of the Nevada County properties, and oversee accounting for all transactions. Appointment of a referee before judgment was unnecessary. No error in the appointment of a referee was committed.[8] Finally, James C. and Ruth have not pointed to any evidence to contradict the court's finding that cross-complainants agreed to accept the award of property "to them as cotenants, and they have stipulated that they will work out the details of who owns what within their group."

---

[8] Michael and Renate "do not now challenge" the appointment of a receiver, but have expressly reserved the right to challenge any issues "that have arisen" following the judgment of partition and appointment order in the future. We do not consider the propriety of any acts undertaken by the referee in this appeal. Michael and Renate have not raised any issues related to the restraining order.

# DISPOSITION

The amount of reimbursement awarded to cross-defendants for capital improvements in the Spring Hill Pharmacy building at 102 Catherine Lane in Grass Valley is reversed. The case is remanded to the trial court with directions to reduce the amount of reimbursement awarded to cross-defendants by the difference between the amount of rent actually paid by David and Nancy and the reasonable market value of their occupancy or use of the property while the parties were co-owners of the Catherine Lane property, based on the evidence previously presented at trial—and only to the extent and for the duration that evidence of the rental value of the premises was presented—and to recalculate, to the extent necessary, the remaining varying percentage interests of each couple in the parcels upon modification of the amount of reimbursement.[9] In all other respects the judgment of partition is affirmed. All the other orders from which the appeals have been taken are affirmed. The parties are to bear their own costs on appeal.

_____
Dondero, J.

We concur:

_____
Margulies, Acting P. J.

_____
Banke, J.

---

[9] For any period during which the parties did not present evidence of the fair market rental value of the property, no offset in the amount of reimbursement is necessary.

16