Filed 4/23/15  Douglas v. Edwards CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KATHLEEN DOUGLAS et al.,<br><br>        Plaintiffs, Cross-defendants and Appellants,<br><br>        v.<br><br>WHITNEY EDWARDS,<br><br>        Defendant, Cross-complainant and Appellant. | D064389<br><br><br>(Super. Ct. No. 37-2011-00066704-CU-OR-EC) |

APPEALS from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed.


Rauch, Detisch & Steinke, Andrew K. Rauch and Kristen S. Steinke for Plaintiffs, Cross-defendants and Appellants.

Kessler & Seecof, Daniel J. Kessler and Benjamin R. Seecof for Defendant, Cross-complainant and Appellant.

Plaintiffs and defendant jointly purchased unimproved real property to board horses, envisioning that plaintiffs would ultimately build a house on the property. Plaintiffs provided the down payment and defendant paid the bulk of the monthly mortgage payments. After plaintiffs built their home and refinanced the mortgage, the parties' relationship soured. Defendant stopped paying the mortgage and removed her horses from the property. Plaintiffs sued defendant for a variety of partnership-related legal and equitable claims, including an alternative claim for partition by sale.

The trial court bifurcated the legal and equitable claims, tried the equitable claims in a bench trial (phase one), and deferred the legal claims to a jury trial (phase two). In a 19-page statement of decision, the trial court explained that it intended to order partition of the property by sale, but offered plaintiffs the "first right to purchase" defendant's interest in the property. The court then entered an interlocutory judgment implementing the plan outlined in the statement of decision.

Plaintiffs appeal, contending that the trial court erred by (1) bifurcating their equitable claims and trying them first, (2) entering an interlocutory judgment of partition, (3) improperly implementing the partition remedy in the judgment, (4) filing a statement of decision after phase one but before phase two, (5) awarding plaintiffs a first right to purchase based on a flawed partnership accounting instead of awarding a right of first refusal based on an alleged partnership agreement, and (6) not considering at trial certain equitable claims that the court previously dismissed on demurrer. Defendant also appeals, contending that the trial court erred by granting plaintiffs a first right to purchase

2

"to the extent [it] was based on a joint venture contract."  We conclude that none of the parties' challenges has merit and we affirm the interlocutory judgment in all respects.

FACTUAL AND PROCEDURAL BACKGROUND

Scott and Lisa Douglas are husband and wife.  Kathleen Douglas is Scott's mother.[1]  Whitney Edwards met Lisa in 1997, before Lisa and Scott were married.  Edwards and Lisa shared an interest in animals and regularly rode horses together, eventually becoming "best friends."

Sometime in 2000 or 2001, Scott, Lisa, and Edwards began exploring the possibility of purchasing a piece of property together.  They wanted at least five acres so they could board and train their horses and dogs.  In 2002, they purchased an undeveloped 10-acre parcel in Ramona (the Property).  They purchased the Property for $181,400, with the Douglases paying the down payment of approximately $60,000 and Edwards agreeing to make the bulk of the monthly mortgage payments.  Kathleen participated in the purchase because she could assist with obtaining financing.  The parties took title to the Property as tenants in common, with Scott and Lisa owning an undivided one-fourth interest, Kathleen owning an undivided one-fourth interest, and Edwards owning an undivided one-half interest.

Scott, Lisa, and Edwards identified sites on the Property where Scott and Lisa could build their home and where Edwards, who already owned a home in San Diego, could build a weekend retreat.  They agreed that the cost of any home construction would

---

[1]     We use first names for purposes of clarity and intend no disrespect.

3

be borne solely by the party who would live in the home. Likewise, they agreed that the regular and ongoing costs for the care of any horse would be the sole responsibility of the owner of that horse. However, they agreed to share equally the cost of certain infrastructure improvements to the land, such as the installation of a well, a pump, and certain pasture fencing. With respect to these improvements, the Douglases generally paid the upfront costs, and Edwards agreed to repay them over time. The parties did not document these arrangements in a formal written agreement.

Scott, Lisa, and their two children lived on the Property in a recreational vehicle while their house was being built. They paid for the construction, in part, with money from a mortgage that Kathleen took out on her home in Northern California.[2] Scott and Lisa's home was completed in 2006. Edwards regularly visited the Property, but never lived on it.

In September 2006, the parties refinanced their original 20-year mortgage with a new $417,000 loan from Virtual Bank that featured a 30-year term and interest-only payments for the first 10 years. Because the Property had been improved with Scott and Lisa's house, the parties were able to obtain a larger loan balance and a lower interest rate residential mortgage compared with a land-only mortgage. After paying off the original loan, the remaining balance of the proceeds of the new loan, $277,583.72, was wired to Scott and Lisa's personal bank account. Scott and Lisa used a large portion of the

---

[2] Scott and Lisa intended for Kathleen to move into their house when she could no longer live on her own.

$277,583.72 to repay Kathleen for the money she had lent them to build their house on the Property. Edwards did not directly receive any proceeds from the refinance.[3]

Within a year of the refinance, Lisa and Edwards's friendship deteriorated. The parties discussed a buyout of Edwards's interest in the Property, but could not agree on terms.[4] Edwards visited the Property less frequently and, ultimately, in April 2009, stopped making the monthly mortgage payments and relocated her horses. Lisa and Scott continued living on the Property and took over the mortgage payments.

The Douglases sued Edwards in March 2011. Their operative second amended complaint (hereinafter, the complaint) asserted 13 legal and equitable claims, including a claim for partition of the Property by sale, but "[o]nly in the event that other alternatives fail to achieve a resolution to this matter . . . ."[5] The trial court sustained, without leave to amend, Edwards's demurrer to the Douglases' quiet title, constructive trust, and rescission causes of action.

---

[3] Edwards later claimed that she was unaware that Scott and Lisa received a cash disbursement from the refinance. The trial court did not find Edwards's claim credible.

[4] This is an understatement. Edwards testified that Scott's response to her initial offer made her feel "offended, horrified, . . . betrayed, deeply hurt, [and] taken advantage of." After receiving the offer, Edwards consulted legal counsel. Edwards interpreted a subsequent e-mail from Scott as "threatening and abusive."

[5] The Douglases asserted the following causes of action: quiet title to real property, declaratory relief, breach of partnership agreement, breach of fiduciary duty, partnership accounting, partnership dissolution, constructive trust, breach of contract, specific performance, promissory estoppel, rescission, negligent misrepresentation, and partition by sale.

5

Edwards filed a cross-complaint against the Douglases asserting causes of action for ouster, fraud, breach of fiduciary duty, constructive fraud, and negligence. In her operative first amended answer to the complaint, Edwards "agree[d] that partition by sale is the only equitable method of partition," and demanded "that the property be partitioned by sale as soon as possible in that defendant has been ousted from the property by the plaintiffs and there is no possibility that defendant and plaintiffs can peacefully continue to own the property as cotenants."

The trial court granted Edwards's motion in limine to bifurcate the parties' legal and equitable claims. The court ruled that it would try the Douglases' equitable claims—partnership accounting, partnership dissolution, specific performance, and partition—in the first phase of trial, and that the remaining claims would be tried to a jury in the second phase.

The trial court tried the equitable claims in November and December 2012 and issued its statement of decision in April 2013. Regarding the nature of the parties' relationship, the trial court rejected the Douglases' claim that they were partners and Edwards's claim that they were mere cotenants, finding instead that their endeavor was "most akin to a joint venture." As to disposition of the Property, the trial court found that partition by sale was the appropriate remedy. However, the trial court awarded the Douglases "the first right to purchase" Edwards's interest in the Property for $112,472.80, which the court described as "the amount necessary to equalize the capital accounts" between the parties "as joint venturers." The court further ordered that if the Douglases did not notify Edwards of their intent to exercise the right to purchase her interest in the

6

Property within 30 days of entry of an interlocutory judgment, the property would be sold "in accordance with [Code of Civil Procedure section] 873.820."[6]

The trial court entered an "Interlocutory Judgment For Partition" consistent with its statement of decision. The parties timely appealed.

DISCUSSION

The Douglases assert a variety of procedural and substantive challenges to the interlocutory judgment and statement of decision. They contend that the trial court erred by (1) bifurcating their equitable claims and trying them first, (2) entering an interlocutory judgment of partition, (3) improperly implementing the partition remedy in the judgment, (4) filing a statement of decision after phase one but before phase two of the trial, (5) awarding plaintiffs a first right to purchase based on a flawed partnership accounting instead of awarding a right of first refusal based on an alleged partnership agreement, and (6) not considering at trial the claims that the court dismissed on demurrer without leave to amend. For her part, Edwards contends that the trial court erred by granting the Douglases a first right to purchase "to the extent [it] was based on a joint venture contract." We conclude that none of the parties' challenges have merit and we affirm the interlocutory judgment in all respects.

---

[6]    Code of Civil Procedure section 873.820 specifies the manner in which the proceeds of a partition sale shall be distributed. All further statutory references are to the Code of Civil Procedure.

7

## I.

*THE DOUGLASES' APPEAL*

*The Trial Court Did Not Err By Trying the Equitable Claims Before the Legal Claims*

The Douglases contend that the trial court erred because "[t]he legal claims in this action should have been heard before the equitable claims." We disagree.

*Legal Framework*

"The order of trial, in mixed actions with equitable and legal issues, has great significance because the first fact finder may bind the second when determining factual issues common to the equitable and legal issues." (*Hoopes v. Dolan* (2008) 168 Cal.App.4th 146, 156 (*Hoopes*).) "It is well established in California jurisprudence that '[t]he court may decide the equitable issues first, and this decision may result in factual and legal findings that effectively dispose of the legal claims.' " (*Id*. at p. 157, quoting *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1244 (*Nwosu*).) Indeed, " ' "[w]hen an action involves both legal and equitable issues, *the equitable issues, ordinarily, are tried first*, for this may obviate the necessity for a subsequent trial of the legal issues." ' " (*Nwosu*, at p. 1238, italics added.) " '[T]he practical reason for this procedure is that the trial of the equitable issues may dispense with the legal issues and end the case.' [Citation.] In short, 'trial of equitable issues first may promote judicial economy.' " (*Hoopes*, at p. 157.)

We review for an abuse of discretion the trial court's decision to bifurcate and try equitable claims first. (*Downey Savings & Loan Assn. v. Ohio Casualty Ins. Co.* (1987) 189 Cal.App.3d 1072, 1086.) A proper exercise of discretion is " 'neither arbitrary nor

8

capricious, but is an impartial discretion, guided and controlled by fixed legal principles, to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice.' " (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977.) Exercises of discretion must be " 'grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue.' " (*Ibid.*) The standard "asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts." (*People v. Williams* (1998) 17 Cal.4th 148, 162.)

*Analysis*

We conclude that the trial court did not abuse its discretion by trying the equitable claims first but, rather, was properly motivated by concerns for judicial economy. After explaining to counsel that "it would be a lot easier on [the court] to let [them] try the legal claims first," the trial court nevertheless concluded that the benefits of judicial economy outweighed the burdens of having to reconcile the results of two phases of trial: "[W]hat the jury ultimately does in deciding the legal claims may not necessarily be consistent with what the court is inclined to do initially and equitably, that there may need to be some reconciliation. From the court's perspective, that risk is manageable and one which the court, given all of the circumstances that I've tried to consider, *not the least of which is time and money, not only to the parties and counsel but to the system as well*, but that on balance the court is inclined to take the laboring oar in hearing all the evidence and arguments from counsel and writing a statement of decision on the equitable claims, which include[] but [are] not limited to the alleged partnership, accounting and

9

dissolution claims filed by plaintiff which, from the court's perspective, may go a long ways towards ultimately resolving this case." (Italics added.)

The Douglases express concern over the potential for mischief created by inconsistent findings across the two phases of trial. Their concern is unwarranted. The trial court's phase one findings will be binding on the jury in phase two, thus minimizing—if not eliminating altogether—the risk of inconsistent findings. This is precisely why trying equitable claims first promotes judicial economy. (*Hoopes*, *supra*, 168 Cal.App.4th at p. 158 ["The rule minimizes inconsistencies, and avoids giving one side two bites of the apple. [Citation.] The rule also prevents duplication of effort."].)

The trial court's comments to counsel at the conclusion of phase one indicate that the court was keenly aware that the binding nature of its phase one findings would eliminate inconsistencies and promote judicial economy: "I don't recall now how many days we spent in trial, but it has occurred to me that if in fact the case [has] not resolved itself before we proceed to the next phase of a jury trial, that the findings and orders that the Court has made will be tantamount to an exhaustive motion [in] limine ruling[]. And the scope of the evidence I would fully expect will not be nearly as broad as one of you want[s] it to be, or nearly as narrow as one of you would like it to be. But you should fully expect that the next phase -- *the scope of the evidence at the next phase, if there is one, will be consistent with the Court's findings and orders through this phase*." (Italics added.)

The Douglases also cite certain of the trial court's pretrial rulings to support their claim that the court erred by trying the equitable claims first. The Douglases first direct

10

us to the trial court's ruling denying Edwards's motion seeking a pretrial order for partition of the Property. In denying the requested relief at that stage, the trial court explained: "In this case, there are factual issues that need to be tried to determine how the proceeds are distributed between the parties. For example, one issue is whether a partnership exists between the parties. Resolution of this issue will affect how a partition will take place and how the proceeds are distributed, the credits owed, what credits exist, etc." The Douglases construe this passage as the trial court "recogniz[ing] the need to make a determination of the legal claims pending between the parties in order to reach a final conclusion on the cause of action for partition." We disagree. The Douglases' argument confuses resolution of "*factual issues*" with resolution of "*legal claims*." As discussed above, trial courts routinely resolve factual issues in phase one trials on equitable issues. (*Hoopes*, *supra*, 168 Cal.App.4th at p. 156; *Nwosu*, *supra*, 122 Cal.App.4th at p. 1244; *Dills v. Delira Corp.* (1956) 145 Cal.App.2d 124, 129 [affirming trial court's determination in phase one equitable trial that no partnership existed, obviating the need for a phase two trial of legal claims].)

The trial court's subsequent ruling on Edwards's motion in limine seeking bifurcation confirms that the trial court was concerned with factual issues, not legal claims: "I want to emphasize that the Court does not intend and would not be comfortable in trying solely the claim for partition as seems to be being requested by the defendant. The Court emphasizes that included within the claims[] the Court intends to adjudicate [in] equity [are] the partnership accounting and dissolution claims. That seems, from the Court's perspective . . . to address the concerns that the Court articulated

11

earlier on in why the Court denied the earlier request to partition the property without prejudice."[7]

In sum, the trial court did not abuse its discretion by trying the equitable claims before the legal claims.

*The Trial Court Did Not Err By Entering an Interlocutory Judgment of Partition*

The Douglases argue that even if the trial court did not err by trying the equitable claims first, "it was error to enter the [j]udgment prior to determination of all claims in the matter because of the resulting inequity and prejudice." We are not persuaded.

Once the trial court determined that partition was appropriate, the court was *required* to enter an interlocutory judgment of partition. (§ 872.720 ["If the court finds that the plaintiff is entitled to partition, it shall make an interlocutory judgment that . . . orders the partition of the property"]; § 904.1, subd. (a)(9) [specifically recognizing and making appealable "an interlocutory judgment in an action for partition determining the rights and interests of the respective parties and directing partition to be made"].) Indeed, in arguing motions in limine to the trial court, the Douglases' counsel acknowledged that partition "*requires an interlocutory judgment.*" (Italics added.)

The Douglases cite "practical" concerns regarding the entry of an interlocutory judgment that they contend compel a different outcome. First, the Douglases raise the

---

7     The court's notice to the parties that it intended to try partnership-related claims in phase one belies the Douglases' claim that, "[i]n reliance on the court's ruling, [the] Douglas[es] presented only that evidence that supported their causes of action in equity and did not present arguments in favor of Breach of Contract, *Partnership*, or any other legal causes of action." (Italics added.) Again, this demonstrates the Douglases' confusion of factual issues with legal claims.

12

possibility that phase two will "shed[] new light or add[] additional factual findings" regarding distribution of partition sale proceeds, or result in a damage award in favor of the Douglases or Edwards that may result in an offset against the phase one findings regarding the distribution of partition sale proceeds. They argue that "[n]either the court nor the parties will be able to turn back the clock to fix the inappropriate distributions from a premature sale of the Property." However, the Douglases never explain why that is the case or why the trial court would not be able to address any offsets by way of the final judgment. Nor are we persuaded by the Douglases' hypothetical concern that the phase one trial judge may be unavailable to try phase two. To the contrary, the trial judge assured the parties that the case would remain with him despite his reassignment to a different department.

Simply put, the trial court did not err by entering an interlocutory judgment of partition.

*The Trial Court Properly Implemented its Partition Remedy*

The Douglases contend that the trial court erred in its implementation of the partition "due to its (1) failure to properly identify the interests of the parties in its [j]udgment; (2) failure to properly identify the Property at issue; (3) failure to appoint a referee or receiver; and (4) failure to include a final accounting." We disagree.

To begin with, the judgment specifically identifies the Property and the parties' respective interests in it as follows: "Plaintiffs and [d]efendant Whitney Edwards are the owners of the following described property: 14934 Lone Oak Trail, Ramona, California, 92065, A.P.N. 331-080-43-00 (hereinafter 'property'); Plaintiff Kathleen R. Douglas,

13

Trustee of The Kathleen R. Douglas 2004 Trust, being the owner of an undivided one-quarter interest; Plaintiffs Scott Allen Douglas and Lisa Murphy Douglas, husband and wife, being the owners of an undivided one-quarter interest, and Defendant Whitney Carr Edwards being the owner of an undivided one-half interest."  That the proportions of the parties' capital accounts in the joint venture differed from the proportions of their ownership interests in the Property does not, as the Douglases suggest without citation to authority, render the judgment's descriptions inadequate.

The Douglases' challenge regarding appointment of a referee is equally unavailing. "The only function of a referee is to assist the court in determining those matters which cannot be so determined upon the evidence before it."  (*Richmond v. Dofflemyer* (1980) 105 Cal.App.3d 745, 755 (*Richmond*).)  It is thus within the trial court's discretion to determine whether a referee would be helpful.  (*Ibid*.)  "In light of the voluminous testimonial and documentary evidence in this case, it would appear the court was amply justified in concluding it would be a waste of time and money to have a referee review and recommend on those issues."  (*Id*. at p. 756.)

In a twist on their referee argument, the Douglases contend that the judgment is deficient because it "is utterly silent on the procedures necessary to employ the order of the court to sell the Property."  In fact, this is not the case.  First, the judgment specifies the procedure for the Douglases' exercise of their first right to purchase.  Failing that, the judgment then states that "the property shall be sold in accordance with the Code of Civil Procedure" and the proceeds distributed according to section 873.820.  Finally, the trial court specified in the judgment that "[i]f additional orders are required to facilitate

14

partition of the property, any party may apply to this Court for appropriate relief." The Douglases do not cite any appropriate relief for which they applied and were denied.

Finally, although the Douglases challenge the judgment's omission of a "final accounting," they fail to explain how the trial court could have completed one prior to the sale of the Property.

*The Statement of Decision Is Procedurally and Substantively Proper*

As with the interlocutory judgment, the Douglases contend that the trial court "erred in completing a [statement of decision] prior to hearing the legal claims." Again, we disagree. California Rules of Court, rule 3.1591(a) expressly contemplates—and, indeed, sometimes requires—the issuance of a statement of decision following the first phase of a bifurcated trial: "When a factual issue raised by the pleadings is tried by the court separately and before the trial of other issues, the judge conducting the separate trial must announce the tentative decision on the issue so tried and must, when requested under . . . section 632, issue a statement of decision . . . ."

The Douglases also devote more than seven pages of their opening brief to their argument that the trial court "erred in failing to fix the objectionable findings" in its statement of decision. (Capitalization omitted.) Their argument, however, merely repeats verbatim their trial court objections—adding no new argument or authority. This is insufficient to raise a claim on appeal. (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368 ["One cannot simply say the court erred, and leave it up to the appellate court to figure out why."]; *Strutt v. Ontario Sav. & Loan Assn.* (1972) 28 Cal.App.3d 866, 873 ["An appellate court is not required to consider alleged errors where the appellant merely

15

complains of them without pertinent argument."].)  In any event, the Douglases

acknowledge in their reply brief that their "objections to the statement of decision

encompass those issues that are the focus of this appeal."  (Capitalization omitted.)

Accordingly, we need not, and will not, consider separately the Douglases' objections to

the statement of decision.

*The Trial Court Did Not Err by Awarding a First Right to Purchase*

The Douglases contend that the trial court erred by not implementing a right of

first refusal in accordance with the terms of an alleged partnership agreement.  They

further contend that the alternative first right to purchase that the trial court awarded is

not supported by the law or the evidence.  We disagree in all respects.

*Additional Background*

The Douglases' complaint alleges that "[i]n the eventuality that either party desired

to sell his/her or their interest in [t]he Property and thereby be removed from the

partnership, the remaining party(s) were to have the first right of refusal to acquire the

interest of the departing partner."  In considering the Douglases' cause of action for

specific performance of this alleged agreement, the trial court construed the claim as

"urg[ing] the Court to permit Plaintiffs to exercise a right of first refusal in order to

remain in their home."  However, the court denied the request as framed, finding that any

agreement regarding a right of first refusal "was not clear enough that the parties could

understand what each was required to do."

Having found that the Douglases were not entitled to a contractual right of first

refusal, the trial court, in ordering partition, nevertheless exercised its equitable powers to

16

grant the Douglases a 30-day window in which to exercise a first right to purchase

Edwards's interest in the Property for $112,472.80, which the court described as "the

amount necessary to equalize the capital accounts" between the parties "as joint

venturers." The court based this finding on the testimony of Edwards's accounting

expert, Mark Boyer.

During a posttrial hearing in which the Douglases complained to the trial court

about the manner in which it granted the first right to purchase, the court responded with

the following explanation of its balancing of the equities:

> "From the Court's perspective, though, and again subject to what we hear from [Edwards's counsel], the Douglases have gotten more -- let me rephrase that -- have generously gotten the benefit of the Court's discretion.
>
> "Over the defendant's vehement objections, the Court interpreted the facts and circumstances of this case to allow the Douglases to have the election first to stay in that house and buy out Dr. Edwards. There's no legal principle that imposed upon me the obligation to give the Douglases that election. It seemed equitable. And quite frankly, I heard you and your clients literally crying out for that remedy to be afforded to them during the presentation of the evidence in the first case.
>
> "You got what you wanted, [Douglases' counsel]. You and your clients got what you wanted. You wanted an opportunity to buy out Dr. Edward[s]. You got it. There's a price to be paid, though, which struck me as fair quid pro quo in return for balancing the accounts of the respective joint ventures. (Italics omitted.)
>
> "In addition, I have trailed this aspect of the litigation for months to give the parties a chance to settle this case. If your clients genuinely wanted to remain in that house, I've given them every opportunity possible. Maybe even more than a lot of judges would have given the parties under these circumstances."

It appears that the Douglases have not exercised the first right to purchase.

17

*Legal Framework*

A coowner of property has an absolute right to partition unless barred by a valid waiver. (§ 872.710, subd. (b).) "[T]he right of partition may be waived by contract, either express or implied." (*American Medical International, Inc. v. Feller* (1976) 59 Cal.App.3d 1008, 1014.) "[A]lthough the action of partition is of statutory origin in this state, it is nonetheless an equitable proceeding [citation], and in its evolution has been conditioned and controlled by the broad principles governing equity jurisprudence." (*Elbert, Limited v. Federated Income Properties* (1953) 120 Cal.App.2d 194, 200; *Richmond*, *supra*, 105 Cal.App.3d at p. 766 ["It must be remembered that a partition suit is in equity."] "The court may, in all cases, order allowance, accounting, contribution, or other compensatory adjustment among the parties according to the principles of equity." (§ 872.140.) In a partition suit, the court has broad equitable "powers and comparatively unlimited discretion to do equity without being bound by any strict rules of procedure." (*Richmond*, at p. 766.)

*Analysis*

The Douglases contend that the trial court erroneously concluded that they were not contractually entitled to a right of first refusal because "the terms of [the right of first refusal in the parties' partnership agreement] have not yet been decided by a jury." This argument fails because it is merely another iteration of the Douglases' theme that the trial court erred by trying the equitable claims—including the Douglases' claim for specific performance of a right of first refusal in accordance with an alleged partnership agreement—in phase one. The trial court's finding that any agreement "was not clear

18

enough that the parties could understand what each was required to do" is binding in phase two. (*Hoopes*, *supra*, 168 Cal.App.4th at p. 156; *Nwosu*, *supra*, 122 Cal.App.4th at p. 1244.) Having found that Edwards did not waive her right to partition by granting the Douglases a contractual right of first refusal, the trial court properly ordered partition. (§ 872.710, subd. (b).)

Turning to the trial court's equitable grant of a first right to purchase, we are unpersuaded by the Douglases' argument that the buyout "value set by the court was made in error because it is arbitrary and not based on any credible evidence." As the trial court explained, the buyout amount was "the amount necessary to equalize the capital accounts" between the parties "as joint venturers." The trial court based its determination of the capital account balances on the expert testimony of accountant Boyer.

Boyer testified that he performed his accounting in accordance with generally accepted accounting practices. He assumed a 50/50 partnership between the Douglases on one hand and Edwards on the other, with the Property—including improvements to the land, but excluding the Douglases' house—as the partnership's only asset. These assumptions are supported by the allegations of the Douglases' verified complaint. Boyer determined that the partnership's expenses totaled $192,865.29, which included interest expenses, property taxes, and attorney fees. Boyer debited each partner's capital account with half of that expense, or $96,432.64 each.

Boyer then determined that Edwards had contributed $72,417.24 to the partnership, leaving her with a capital account of negative $24,015.41, after applying her half of partnership expenses. Boyer credited the Douglases with the $237,528.15 that

19

they had contributed to the partnership, but also debited the $277,583.72 cash that they received from the $417,000 mortgage refinance. This left the Douglases with a capital account of negative $136,488.21. The difference between the Douglases' and Edwards's capital accounts was $112,472.80—the amount the trial court set as the Douglases' buyout price. That amount is thus supported by substantial evidence in the record.

The Douglases take issue with several aspects of Boyer's analysis. First, they contend that his analysis is "incomplete" because Boyer did not determine which partners' payments went toward principal and interest, respectively. This, they contend, affects the parties' respective ownership interests in the Property. However, Boyer testified that partnership accounting principles do not distinguish between principal and interest payments at the partner level.

Second, the Douglases criticize Boyer for not including "the value of the improvements made by [the] Douglas[es]," most notably, the approximately $430,000 that they contend that they spent building their house. However, based on the Douglases' allegation in their verified complaint that "the 'costs and benefits' of the 'construction' for Plaintiffs to build a house would belong 'exclusively' to the party building the house," the trial court "deem[ed] the evidence of plaintiff's construction costs to build their house . . . to be irrelevant to all claims involving the alleged partnership." Consequently, the trial court also found the Douglases' accounting expert to be unpersuasive because his "analysis is permeated with Plaintiffs' construction costs which the Court has already deemed to be irrelevant."

20

Finally, the Douglases assert that the trial court's accounting inconsistently "charged [the Douglases] for the loan that they took out (and are solely obligated to repay) and did not give them any credit for the costs that they incurred to build the house on the Property." However, this assertion contradicts the trial court's accounting, which identifies the loan as an obligation of the joint venture, not the Douglases. Further, the Douglases' argument that the trial court deprived them of the value of the house ignores that the trial court excluded the house from the partnership accounting based on the Douglases' own verified pleading.

In light of the fact that the trial court was exercising its equitable powers to fashion a first right to purchase where no such contractual right existed, we conclude that the trial court acted within its broad equitable "powers and comparatively unlimited discretion to do equity without being bound by any strict rules of procedure." (*Richmond*, *supra*, 105 Cal.App.3d at p. 766.)

*The Douglases Have Not Properly Challenged the Trial Court's Demurrer Ruling*

The Douglases contend that the trial court "erred by failing to consider rescission, quiet title, and constructive trust." (Capitalization omitted.) They assert that ordering partition without first considering these causes of action "effectively deprives the [Douglases] of meaningful rights to appeal [their contention that] the Court erroneously dismissed their causes of action . . . in early demurrer proceedings." This contention fails for two reasons.

First, the Douglases did not raise this issue with the trial court. "A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the

21

objection in the trial court." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 221-222; *In re S.B.* (2004) 32 Cal.4th 1287, 1293 [a "reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court"].)

Second, and in any event, the Douglases are simply mistaken that they "are required to wait until a final judgment is rendered before appealing the court's order dismissing the [q]uiet [t]itle and other causes of action." "Upon an appeal pursuant to [s]ection 904.1 or 904.2,[8] the reviewing court may review . . . any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party . . . ." (§ 906.) The Douglases' dismissed causes of action all relate to the parties' ownership interests in the Property,[9] which the trial court determined in connection with the interlocutory judgment of partition. Thus, the Douglases could have, but have not, sought review of the trial court's demurrer ruling in this appeal. They are not, as they claim, "facing a 'catch-22' where it is not appropriate to appeal the ruling on the

_____

8      An interlocutory judgment in a partition action is appealable under section 904.1, subdivision (a)(9).

9      The quiet title claim alleges that "[d]efendant has no right, title, estate, lien, or interest in [t]he Property as improved"; the constructive trust claim alleges that "title wrongly reflects that [d]efendant owns half of [t]he Property, when, in fact, she does not. Thus, [d]efendant holds, in constructive trust for [p]laintiffs, all that portion of the real property wrongfully reflected by title"; and the rescission claim alleges that "title will and does wrongfully reflect that [d]efendant owns an undivided one-half interest in [t]he Property, despite her failure to pay for the portion reflected therein, and will result in a cloud on title."

22

[d]emurrers at this time, but it would be moot to do so at the end of the second phase of trial since the Property will be sold." This argument is, in essence, simply another iteration of the Douglases' persistent theme that the trial court erred by bifurcating the trial and entering an interlocutory judgment.

## II.

### *EDWARDS'S APPEAL*

Edwards also appeals the interlocutory judgment, but only "to the extent th[e] 'first right to purchase' was based on a joint venture contract . . . ." However, the record is clear that the trial court granted the first right to purchase in connection with its *equitable* grant of partition and not in connection with any finding of a contractual relationship in the nature of a joint venture. First, the right appears in the "partition" section of the statement of decision, not in the "specific performance" section addressing the Douglases' claim for a contractual right of first refusal. Second, the trial court stated during a posttrial hearing that "[t]here's no legal principle that imposed upon me the obligation to give the Douglases that election. It seemed equitable."[10] Because the trial court did not grant the first right to purchase "based on a joint venture contract," but rather, based on its equitable powers, we affirm the interlocutory judgment. (*Richmond*, *supra*, 105 Cal.App.3d at p. 766 [In a partition suit, the court has broad equitable "powers and comparatively unlimited discretion to do equity without being bound by any strict rules of procedure."].)

---

[10] Edwards cites this passage in her respondent's brief, suggesting that she is aware of the basis on which the trial court awarded the first right to purchase.

23

DISPOSITION

The interlocutory judgment is affirmed.  Edwards is entitled to her costs on appeal.

AARON, J.

WE CONCUR:


McDONALD, Acting P. J.


McINTYRE, J.